

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| **STATE EX REL. TRAVIS JONES,** | ) | *Opinion issued April 30, 2019* |
| | ) | |
| **Relator,** | ) | |
| | ) | |
| **v.** | ) | **No. SC97417** |
| | ) | |
| **THE HONORABLE ERIC EIGHMY,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### ORIGINAL PROCEEDING IN PROHIBITION

Travis Jones seeks a writ prohibiting the circuit court from holding a probation revocation hearing. He contends the circuit court failed to make every reasonable effort to hold his probation revocation hearing prior to the expiration of his term of probation and has lost authority to do anything other than order his discharge from probation. This Court agrees. While the circuit court gave timely notice of an intent to hold a probation revocation hearing and scheduled the hearing for a date within the term of probation, it failed to make every reasonable effort to bring Mr. Jones before the court before the term expired. Aware that he was being held in jail in a nearby county, neither the court nor the prosecutor made any attempt to bring Mr. Jones before the court by issuing a writ of

habeas corpus *ad testificandum* or *ad prosequendum* as it did some nine months later after his probationary term already had expired. Accordingly, it has lost the power to revoke his probation. The writ is made permanent, and the circuit court is ordered to discharge Mr. Jones from probation.

## I.    *FACTUAL AND PROCEDURAL BACKGROUND*

In 2014, Mr. Jones pleaded guilty to one count of felonious restraint. On December 11, 2014, the circuit court sentenced him to ten years in prison but suspended execution of his sentence and placed him on five years' probation, which meant his initial date for release from probation was December 10, 2019.

An offender's release date can be shortened by the accumulation of earned compliance credits (ECCs). The division of probation and parole's award of ECCs reduces the probationary term "by thirty days for each full calendar month of compliance with the terms of supervision." *§ 217.703.3.*[1] An offender is deemed to be in compliance in any calendar month in which there is not "an initial violation report submitted by a probation or parole officer … or a motion to revoke or motion to suspend filed by a prosecuting or circuit attorney, against the offender." *§ 217.703.4*; *State ex rel. Coleman v. Horn, 568 S.W.3d 14, 19 (Mo. banc 2019), quoting, State ex rel. Parrott v. Martinez, 496 S.W.3d 563, 569 (Mo. App. 2016)* ("Compliance 'is not defined as the strict fulfillment of each and every term of probation in a given month but is defined as the

---

[1] All statutory references are to RSMo 2016.

absence of an initial violation report or a motion to revoke or suspend.'").[2] "At least twice a year, the division shall calculate the number of months the offender has remaining on his or her term of probation, parole, or conditional release, taking into consideration any earned compliance credits, and notify the offender of the length of the remaining term." *§ 217.703.9*. Based on this calculation, probation and parole informs the offender and the court of the offender's earned discharge date, which is the date under existing circumstances by which the offender has earned release from supervision even if he or she does not accrue any more months of ECCs. *Id.; see Ban v. State, 554 S.W.3d 541, 547 (Mo. App. 2018)*.

Mr. Jones was first eligible to earn ECCs under section 217.703.3 in February 2015. Throughout 2015 and the beginning of 2016, Mr. Jones accrued ECCs in all but the three months in which probation violation reports were filed – February 2015, April 2015, and June 2016. In July 2016, after his third probation violation report was filed, prosecutors filed a motion to revoke his probation. The court held a probation revocation hearing and decided to continue Mr. Jones on probation but ordered him to complete 120 days of "shock time" in the Taney County jail.

Thereafter, Mr. Jones continued to serve his probation and continued earning ECCs until June 2017, when a new probation violation report was filed. Finally, in August 2017, Mr. Jones received two additional probation violation reports. The August

---

[2] In recently affirming this rule, this Court noted the legislature amended section 217.703.4, effective August 28, 2018. *Coleman, 568 S.W.3d at 20*. Under the amended version, submission of a notice of citation has been included in addition to the submission of an initial violation report to indicate when a probationer is not in compliance. *Id.*

2017 violation reports state Mr. Jones violated his probation by committing unrelated charges and was being held in jail in neighboring Barry County. They set out Mr. Jones' calculated earned discharge date as December 20, 2017. [3]

Based on the August 2017 probation violation reports, the prosecutor filed a new motion to revoke probation. The circuit court set a hearing on the motion for September 28, 2017, issued a capias warrant for Mr. Jones' arrest, and appointed counsel. But the prosecutor did not seek, and the circuit court did not issue, a writ of habeas corpus *ad testificandum* or *ad prosequendum* or, so far as the record shows, make any other attempt to bring Mr. Jones before the court for the hearing. As Mr. Jones was incarcerated in the Barry County jail at the time of the hearing, he did not appear. The court made a docket entry on September 28, 2017, stating: "Deft fails to appear – warrant already in place."

Despite Mr. Jones' earned discharge date of December 20, 2017, clearly calculated by probation and parole and set out in the record before the court, no action was taken for the next nine months. Notably, the court did not set another hearing prior to Mr. Jones' discharge date nor direct the prosecutor to locate Mr. Jones despite the record stating he was being held in Barry County jail. Matters remained unresolved until finally, in June

---

[3] This date was calculated by probation and parole based on Mr. Jones' 24 months, or 720 days, of accumulated ECCs to that date, which was calculated by subtracting his earned ECCs from his original probation termination date. While Mr. Jones, the State and probation and parole all calculate different earned discharge dates, "under section 217.703, the division, and not the circuit court, had the duty to calculate and award [the probationer]'s ECCs." *Coleman, 568 S.W.3d at 19*; *see also State ex rel. Amorine v. Parker, 490 S.W.3d 372, 375 (Mo. banc 2016)* (relying on probation and parole's calculation of earned discharge date). Accordingly, this Court uses the discharge date calculated by probation and parole of December 20, 2017, as Mr. Jones' earned discharge date.

2018, Mr. Jones decided to contact the circuit court himself and ask it to revoke his probation and give him credit for time served, resulting in his release. After receiving this motion, the prosecutor finally requested, and the circuit court issued, a writ of habeas corpus *ad prosequendum,* which brought Mr. Jones to Taney County so he could attend a finally scheduled probation revocation hearing.

Appointed counsel for Mr. Jones then filed a motion for discharge from probation, arguing the circuit court had no authority to revoke his probation as the probationary term had already expired due to the accrued ECCs. When the circuit court nonetheless scheduled a probation revocation hearing, Mr. Jones filed a petition for a writ of prohibition or mandamus with the court of appeals and then with this Court. This Court issued its preliminary writ, which it now makes permanent.

## II.    STANDARD OF REVIEW

An appellate court will issue a writ of prohibition to "(1) prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or when (3) a party may suffer irreparable harm if relief is not granted." *State ex rel. Merrell v. Carter*, 518 S.W.3d 798, 799 (Mo. banc 2017) (internal quotation omitted). Writ relief is appropriate if a circuit court has lost authority to conduct a probation revocation hearing. *Amorine, 490 S.W.3d at 376.* The probationer "bears the burden of demonstrating the circuit court failed to make every reasonable effort to conduct the probation revocation hearing prior to the expiration of the probationary period." *State ex rel. Zimmerman v. Dolan, 514 S.W.3d 603, 608 (Mo. banc 2017).*

5

### III. THE CIRCUIT COURT DID NOT MAKE EVERY REASONABLE EFFORT TO CONDUCT A PROBATION VIOLATION HEARING BEFORE MR. JONES' EARNED DISCHARGE DATE

Mr. Jones contends that he is entitled to a writ prohibiting the circuit court from conducting a probation violation hearing because no such hearing was held before his earned discharge date and the circuit court failed to make every reasonable effort to conduct a probation violation hearing before that date.

The requirements for the award of ECCs are not discretionary. Section 217.703.3 provides, "Credits **shall** begin to accrue for eligible offenders after the first full calendar month of supervision" in which the offender is in compliance (emphasis added). Any month in which individuals are not in compliance, credits do not accrue, but "[i]f no hearing is held … then the offender shall be deemed to be in compliance and shall begin earning credits on the first day of the next calendar month." *§ 217.703.5*.

It is probation and parole's duty to calculate earned discharge dates based on subtracting ECCs from the date the offender's probation otherwise would end. "[O]nce the combination of time served in custody, if applicable, time served on probation, parole, or conditional release, and earned compliance credits satisfy the total term of probation, parole, or conditional release, the board or sentencing court **shall** order final discharge of the offender." *§ 217.703.7* (emphasis added).

Mr. Jones' earned discharge date was December 20, 2017. At that point, pursuant to section 559.036.8, the circuit court lost its authority to revoke his probation unless it complied with the notice and hearing requirements of section 559.036.8, which provides:

The power of the court to revoke probation shall extend for the duration of

6

the term of probation designated by the court and for any further period which is reasonably necessary for the adjudication of matters arising before its expiration, *provided that* some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration of the period and that *every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period*.

(Emphasis added). In other words, once the earned compliance date is reached, the court loses power to revoke probation unless the court both (1) manifested its intent to conduct a revocation hearing before the probation term ended and (2) then made "every reasonable effort" to notify the probationer and conduct the hearing before the term ended. *Id.*; *State ex rel. Strauser v. Martinez, 416 S.W.3d 798, 801 (Mo. banc 2014); State ex rel. Stimel v. White, 373 S.W.3d 481, 484 (Mo. App. 2012).*[4]

There is no question here that the circuit court manifested its intent to hold a probation revocation hearing prior to the earned discharge date, for it set a probation revocation hearing for September 29, 2017, over two months prior to the earned discharge date. But Mr. Jones argues the court failed to undertake every reasonable effort

---

[4] The State makes the novel argument Mr. Jones is not eligible for final discharge despite reaching his earned discharge date without his parole being revoked because the filing of a motion to revoke temporarily suspends the effect even of those ECC credits an offender already had earned until a probation revocation hearing is held. In support, it cites the statement in section 217.703.5 that "[c]redits shall not accrue during any calendar month in which a ... motion to revoke ... has been filed, and shall be suspended pending the outcome of a hearing, if a hearing is held." But this language, by its terms, refers only to the continued accumulation of credits. It does not mention the suspension of earned credits. Suspension of earned credits is addressed in *another portion of* section 217.703.5. The legislature knew how to distinguish between earned credits and other credits and did so in these provisions. "This Court must presume every word, sentence or clause in a statute has effect, and the legislature did not insert superfluous language." *Bateman v. Rinehart, 391 S.W.3d 441, 446 (Mo. banc 2013).*

to notify him and conduct the hearing before the expiration of his probation, as also is required by section 559.036.8.

Prior cases have addressed what constitutes "every reasonable effort" to conduct a hearing and to interpret what constitutes a "reasonable time" after the term ends in which to adjudicate matters arising prior to the expiration of the term. These cases note it is not unreasonable to expect the circuit court to attempt to bring the prisoner before the court even when the prisoner is being held in another county or state. "In Missouri, writs of habeas corpus ad prosequendum have long been a traditional means of securing the presence of prisoners located in another jurisdiction for the purposes of prosecuting the prisoner for some other offense." *Zimmerman, 514 S.W.3d at 611.*

*Zimmerman* provides a good example. In that case, this Court found a circuit court failed to make every reasonable effort to bring the probationer to Missouri from another state's prison by means of a writ of habeas corpus *ad prosequendum* when the probationer had repeatedly asked for prompt disposition of his case, even though the circuit court previously had used such a writ to bring the probationer back for other reasons. *Id. at 612.* Similarly, *State ex rel. Dotson v. Holden, 416 S.W.3d 821 (Mo. App. 2013),* a case with facts similar to the case at bar, found the circuit court had not made reasonable efforts:

> [T]he record does not reflect any apparent effort to conduct a hearing during the nine months prior to the expiration of Dotson's probation. As noted above, Respondent and the State had knowledge that Dotson was in the custody of the Missouri Department of Corrections. Therefore, Respondent could have set a probation revocation hearing in this matter and, by means of a writ of habeas corpus ad testificandum or ad prosequendum, could have secured Dotson's presence for such a hearing.

*See* § 491.230 RSMo (2000). Neither Respondent nor the State made any effort to set or conduct a probation revocation hearing until nearly a year after the term of probation had expired.

*Id. at 824-25.*

Moreover, contrary to the State's and dissenting opinion's argument that Mr. Jones or his counsel should have brought the expiration of his term to the attention of the court or prosecutor and asked for a timely hearing, section 559.036.8 provides it is the responsibility of the circuit court to notify the offender and make every reasonable effort to hold the hearing before the probation expires; it is not the duty of the offender or the offender's attorney "to ensure the trial court ruled on the pending revocation motions." *Strauser, 416 S.W.3d at 803*.

The dissenting opinion recognizes it is the circuit court's responsibility to hold a timely hearing, acknowledging, "Jones' counsel was under no obligation to request a writ to bring Jones back to court to face the alleged probation violation." But the dissenting opinion inconsistently contends Mr. Jones' counsel's failure to request a hearing should be "interpreted as an indication that Jones did not want to be brought back to face the violation prior to the disposition of his Barry County case." In other words, the dissenting opinion would excuse a circuit court's failure to make every reasonable effort to hold a hearing prior to the expiration of the probation term unless the represented probationer affirmatively requests a hearing. But this does exactly what the cases disallow; it just does it by inference rather than by formally placing the burden on defendant to ask to have the statute enforced. The statute clearly directs, and numerous prior cases hold, it is the court's duty, not the probationer's duty, to use every reasonable

9

effort to conduct a hearing before the expiration of the term. *§ 559.036.8*; *Zimmerman,*

*514 S.W.3d at 608; Amorine, 490 S.W.3d at 375*; *Strauser, 416 S.W.3d at 803*. Waiting

to see if the probationer asks the court to comply with its statutory duty does not

constitute the circuit court making "every reasonable effort."[5]

Of course, what efforts are reasonable depend on the circumstances. "To retain

authority to revoke probation beyond the probationary term, the trial court is not required

to take all conceivable steps to secure the defendant's presence, only reasonable steps."

*Zimmerman, 514 S.W.3d at 613* (Wilson, J., concurring) (emphasis omitted). But, the

facts here do not present a case in which, for example, the court was unaware of

Mr. Jones' incarceration or issued a writ but was unsuccessful at securing the offender's

presence. Instead, the court here had full knowledge of Mr. Jones' earned discharge date

of December 20, 2017, and the case file showed Mr. Jones was detained in Barry County

due to the very acts the prosecutor said should result in his probation being revoked.

---

[5] Further, the dissenting opinion's fear some defendants may wish to finish time-sensitive commitments, such as a treatment program, before being brought back for a hearing is misplaced for numerous reasons. If a probationer does not want to be brought back until he or she has finished a treatment program, the probationer can so inform the circuit court. *Cf. Strauser, 416 S.W.3d at 803* (noting if defendant had requested continuance, delay of hearing would not have stripped court of authority); *Petree v. State, 190 S.W.3d 641, 642-43 (Mo. App. 2006)* (holding delay of hearing due to Petree's request for a continuance "would not be construed as an unreasonable delay"). In the absence of such a request, however, the statute puts the burden on the court to hold a timely hearing. That makes sense, for the many probationers who are not in a treatment program would not benefit from the kind of forced extension of probation advocated for by the dissenting opinion. Indeed, a presumption of an intent to finish one sentence before having probation revoked on another could be seen to create a risk of *de facto* consecutive sentences. Many probationers – including Mr. Jones, as is evident from the letter he wrote the circuit court – wish to avoid this risk by having their probation issues determined in the timely manner required by the statute.

There were multiple avenues to bring Mr. Jones to the court for a revocation hearing prior to the expiration of his probation in December 2017. Instead, the circuit court here took no action at all for nine months after the September hearing. This does not constitute every reasonable effort to conduct the hearing prior to the expiration of Mr. Jones' probationary term.

Because the circuit court failed to make every reasonable effort to hold a probation revocation hearing before the expiration of Mr. Jones' probation, he was entitled to discharge. *See Amorine, 490 S.W.3d at 376; Strauser, 416 S.W.3d at 803-04* (circuit courts lost authority over probationers when revocation hearings were continued over and over past the end of the probation term).

## IV. CONCLUSION

Mr. Jones' term of probation has expired. This Court makes its preliminary writ of prohibition permanent and orders the circuit court to discharge Mr. Jones from probation.

_____
**LAURA DENVIR STITH, JUDGE**

Draper, Russell, and Breckenridge, JJ., concur;
Powell, J., dissents in separate opinion filed;
Fischer, C.J. and Wilson, J., concur in opinion
of Powell, J.



# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. TRAVIS JONES,      )
                                        )
                Relator,         )
                                         )
v.                                      )      No.  SC97417
                                         )
THE HONORABLE ERIC EIGHMY,    )
                                         )
                Respondent.   )

## DISSENTING OPINION

I respectfully dissent. Because the circuit court issued a writ to bring Travis Jones to court within weeks of his request to dispose of his probation violation matter, the circuit court complied with the statutory requirement to make every reasonable effort to conduct the probation revocation hearing prior to Jones's probation term expiring.

Pursuant to § 559.036.8,[1] the circuit court's authority to revoke probation "extend[s] for the duration of the term of probation designated by the court and for any further period which is **reasonably** necessary for the adjudication of matters arising before its expiration." (Emphasis added); *see also Zimmerman v. Dolan*, 514 S.W.3d 603, 608 (Mo. banc 2017). Both parties acknowledge the basis for conducting the revocation hearing occurred prior

---

[1] All statutory references are to RSMo 2016.

to the expiration of Jones's probation.[2] However, the circuit court sought to adjudicate the matter several months after Jones's probation expired. As such, the central issue in this case is whether conducting the hearing in September 2018 was reasonable as set forth in § 559.036.8.

The circuit court's authority to revoke probation and conduct a probation violation hearing extends beyond the expiration of the term of probation as long as: 1) some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration; 2) every reasonable effort is made to notify the probationer; and 3) the circuit court makes every reasonable effort to conduct the hearing prior to the expiration of the probation term. § 559.036.8; *see also State ex rel. Strauser v. Martinez*, 416 S.W.3d 798, 801 (Mo. banc 2014). Here, there was an affirmative manifestation of the intent to conduct a revocation hearing when the division of probation and parole filed the probation violation report; the State filed a motion to revoke Jones's probation; and the circuit court issued a warrant, setting the probation violation hearing for September 2017 – two months before Jones's probation expired. It is also uncontested that the circuit court notified Jones of its intent to conduct a revocation hearing prior to the expiration of the probation term, as the circuit court sent notice of the September 2017 probation violation hearing to Jones's attorney. The only contested issue is whether the circuit court made every reasonable effort

---

[2] Jones's alleged probation violation arising from the new criminal offense brought in Barry County was reported in August 2017 – before the expiration of his probation due to the accumulation of earned compliance credits in December 2017.

2

to conduct the hearing prior to the expiration of his probation in December 2017. Clearly, it did.

The principal opinion concludes the circuit court did not make "every reasonable effort" to conduct the probation violation hearing because it did not issue a writ to bring Jones from the jurisdiction in which he was lawfully being held until Jones requested resolution of his probation matter. Citing *Zimmerman*, the principal opinion states it is not unreasonable to expect the circuit court to bring a probationer before the court when the probationer is in custody in another county or state. But what the principal opinion fails to acknowledge is that the probationer in *Zimmerman* had specifically requested – on four separate occasions over a span of 11 years – to resolve the outstanding probation violation while he was being held in custody in another jurisdiction. 514 S.W.3d at 605-06. This Court in *Zimmerman* held it was unreasonable for the circuit court to ignore the multiple requests to resolve the outstanding probation violation matter because the court could have honored Zimmerman's request by issuing a writ of habeas corpus *ad prosequendum*. *Id*. at 611-12. Specifically, *Zimmerman* held:

> [T]he circuit court failed to articulate any reason on the record why it failed to rule on any of Zimmerman's requests for counsel, his requests for prompt disposition of his claims under the IAD, or why it failed to enforce its order directing the prosecuting attorney to prepare the writ and the sheriff's department to remove the 'will not expedite" language.

*Id*. at 612. The linchpin of the *Zimmerman* holding is that the probationer had requested resolution of his probation violation and the circuit court failed to act and, therefore, did not make every reasonable effort to conduct the probation violation hearing.

3

The facts of this case, however, are very different. The circuit court complied with the holding of *Zimmerman* by immediately issuing a writ of habeas corpus *ad prosequendum* after Jones contacted the court to seek resolution of his probation matter. Jones contacted the circuit court on June 14, 2018, and the circuit court quickly took action and issued a writ of habeas corpus *ad prosequendum* on July 2, 2018, setting the probation revocation hearing for September. This distinction is significant; Jones may not have desired to resolve his probation matter while he was in custody in Barry County.[3] The practical effect of the principal opinion's holding will be that probationers no longer have a say in whether they are transferred to another jurisdiction to resolve a probation matter. To avoid losing authority over a probation matter, the principal opinion forces circuit courts to issue a writ and remove probationers from another jurisdiction – regardless of the probationer's wishes. This very well may result in negative consequences for probationers who, for instance, are attempting to finish substance abuse, mental health, education, or other valuable programs offered by the institution holding the probationer in custody. Probationers also might not want to address their probation matter prior to resolving the matter resulting in their incarceration in the other jurisdiction.[4] Removing these options

---

[3] By way of example, Jones may have been attempting to work out a favorable plea agreement in Barry County that could positively affect the resolution of his probation matter. If Jones was put on probation in Barry County, the circuit court in the probation matter may be less likely to revoke Jones's probation and send him to prison and, instead, just let his probation expire or discharge.

[4] For instance, Jones would be in a precarious position if brought back to face the probation violation prior to disposing of the new charge because his underlying violation was the new offense alleged to be committed in Barry County. Jones would either have to exercise his right to remain silent under the Fifth Amendment or attempt to defend himself, which may result in incriminating himself with respect to the new charge. For this reason, it may be

4

from probationers simply does not comport with the reasonableness requirement of § 559.036.8 as interpreted by *Zimmerman*.[5] Because the circuit court ultimately issued the writ upon Jones's request and brought him back to resolve the outstanding probation matter, the circuit court complied with the "every reasonable effort" requirement of § 559.036.8.

For these reasons, I would quash this Court's preliminary writ; therefore, I dissent.

_____
W. Brent Powell, Judge

---

reasonable for the court and the probationer to resolve the underlying active criminal offense prior to addressing the probation violation.

[5] *Zimmerman* is also distinguishable from the facts of this case because Jones was represented by counsel. Jones's counsel was notified of the probation violation hearing and was aware of the existence of Jones's outstanding warrant. Although Jones's counsel was under no obligation to request a writ to bring Jones back to court to face the alleged probation violation, his lack of action could reasonably be interpreted as an indication that Jones did not want to be brought back to face the violation prior to the disposition of his Barry County case.