

# SUPREME COURT OF MISSOURI
# en banc

STATE ex rel. TRAVIS JONAS, )     *Opinion issued June 30, 2020*
)
          Petitioner, )
)
v. )     No. SC97674
)
DEAN MINOR, )
)
          Respondent. )

## ORIGINAL PROCEEDING IN HABEAS CORPUS

Travis Jonas seeks a writ of habeas corpus on the ground his due process rights were violated as a result of the circuit court revoking his probation and ordering his sentence executed despite having sufficient earned compliance credits (ECCs) and having paid restitution in full. He asserts he should have been discharged from probation. Because the combination of Jonas' time served on probation and accrued ECCs would have entitled him to discharge under section 217.703.7,[1] the circuit court no longer had authority to revoke his probation after he paid restitution. He should have been discharged before the State attempted to revoke probation and the circuit court

---

[1] All statutory references are to RSMo Supp. 2013, unless otherwise noted.

subsequently suspended and revoked his probation. Habeas relief granted; Jonas is to be discharged from the Missouri Department of Corrections' custody.

**Background**

On July 13, 2012, Jonas pleaded guilty to the class C felony of identity theft. The circuit court sentenced Jonas to seven years in the Missouri Department of Corrections, suspended the execution of that sentence, and placed him on a five-year term of probation. As part of the special conditions of the probation, Jonas was subject to obtaining the REACT assessment,[2] random drug testing, substance abuse evaluation, including any treatment as directed by the division of probation and parole, and payment of the full amount of restitution.

Jonas' probation was punctuated by field violation reports filed by his probation officer and motions to suspend and revoke his probation filed by the State. The State moved to suspend and revoke probation on May 22, 2013, for failure to pay restitution. The State withdrew this motion on September 12, 2013. On that date, the circuit court imposed an additional condition that Jonas pay a specific amount toward the restitution on a monthly basis. The docket reflects that the hearing regarding the motion was cancelled.

On November 20, 2013, Jonas' probation officer filed a field violation report. The field violation report detailed that Jonas violated his probation due to failure to pay the

---

[2] The Required Educational Assessment and Community Treatment program (REACT) is a screening assessment to determine if a level of substance abuse or mental health treatment is necessary. The need for the assessment is not clear when Jonas' offense was identity theft. *See* section 559.630, RSMo 2000; section 559.633.1, RSMo 2000.

2

monthly court-ordered restitution imposed in September, and it recommended a continuance of probation with a plan to pay the restitution. The field violation report concluded Jonas had an optimal discharge date of April 19, 2015, at the latest.[3] The docket reflects no hearing regarding this field violation report.

On June 10, 2015, Jonas' probation officer filed a case summary report. The report specified Jonas had an outstanding restitution balance and was paying it on a monthly basis. The case summary report included sentence information for the identity theft sentence as well as two other suspended impositions of sentence under a separate docket number. On the identity theft case, the report noted, "JONAS WILL REMAIN UNDER SUPERVISION ON THE FOLLOWING CASE: 1111-CR0374[1]-01[.]"

On June 11, 2015, the State filed a motion to suspend and revoke Jonas' probation for failure to pay the court-ordered restitution. The status/restitution hearing was repeatedly continued. Jonas tendered his last payment toward restitution on November 2, 2015. The division of probation and parole received proof of the payment on November 4, 2015. On November 5, 2015, the State withdrew the motion to suspend and revoke probation.

Jonas' probation officer filed a field violation report at the end of January 2016. The field violation report noted Jonas had violated his probation because of a failure to

---

[3] An optimal discharge date assumes the probationer continues to accrue ECCs without interruption. On this field violation report, which only listed the docket number corresponding to the identity theft probation, the discharge availability was described as follows: "JONAS HAS AN EARNED DISCHARGE DATES OF 06/17/16 AND 09/10/16 AND HE HAS OPTIMAL DATES OF 03/01/15 AND 04/19/15." It is not clear why two dates are listed.

complete REACT and due to an arrest for felony identity theft, passing a bad check, and forgery. The arrest occurred in mid-December 2015. The field violation report concluded Jonas had fully paid his restitution and had an earned discharge date of March 15, 2016. A case summary report was filed the same day. The case summary report noted the same earned and optimal discharge date of March 15, 2016. It recommended that – due to the arrest for felony identity theft, passing a bad check, and forgery, and because Jonas was in violation for failure to complete REACT – his probation be suspended and a hearing be held.

Acting on these reports, on February 1, 2016, the State filed a motion to suspend and revoke Jonas' probation. His probation was suspended February 9, 2016, and remained suspended until May 11, 2017, when it was revoked and his seven-year sentence was executed. The circuit court found Jonas' failure to obtain the REACT assessment and conduct leading to his arrest violated the conditions of his probation. Jonas remains incarcerated in the Moberly Correctional Center, where Dean Minor is the warden.

Following his probation revocation, Jonas filed a *pro se* Rule 24.035 motion, and court-appointed counsel filed an amended motion alleging the circuit court lacked authority to revoke Jonas' probation because Jonas had acquired enough ECCs to be discharged before the February 2016 suspension of probation. The circuit court held an evidentiary hearing at which the State presented the testimony of a probation and parole officer who had reviewed Jonas' file. Based on the field violation reports and motions to revoke, the probation and parole officer stated Jonas' discharge date through operation of

4

ECCs was May 24, 2015, but Jonas had not paid his restitution by that date.[4] The circuit court ultimately overruled Jonas' Rule 24.035 motion, concluding section 217.703.8 did not allow the court to calculate the proper award of ECCs in a motion for postconviction relief.

Jonas then sought and was denied habeas relief in the circuit court and the court of appeals. Jonas now seeks a writ of habeas corpus from this Court.

## Jurisdiction and Standard of Review

This Court has jurisdiction to issue original remedial writs. Mo. Const. art. V, sec. 4.1. "Any person restrained of liberty within this state may petition for a writ of habeas corpus to inquire into the cause of such restraint." Rule 91.01(b); *see also* section 532.010, RSMo 2016 ("Every person committed, detained, confined or restrained of his liberty, within this state, for any criminal or supposed criminal matter, or under any pretense whatsoever . . . may prosecute a writ of habeas corpus as herein provided, to inquire into the cause of such confinement or restraint."). A habeas corpus proceeding may be used to challenge a probation revocation. *State ex rel. Nixon v. Jaynes*, 73 S.W.3d 623, 624 (Mo. banc 2002).

---

[4] The officer's testimony indicated Jonas could have been discharged in the first week of January 2016 if the division of probation and parole had provided the circuit court and prosecutor with 60 days' notice on November 5, 2015, the date the State withdrew its motion to suspend and revoke probation and after restitution was paid, and if the court had taken no action after receiving that notice. No explanation was offered why the division did not provide such notice.

**Analysis**

Jonas argues he is entitled to habeas relief on the ground the circuit court lacked authority to revoke his probation. He alleges proper application of the statute governing ECCs, section 217.703, would have required his discharge before the circuit court suspended his probation in February 2016.

## I. *Jonas Can Challenge the Calculation of His Discharge Date in Habeas Corpus*

The State argues Jonas cannot challenge the calculation of his discharge date in habeas corpus because section 217.703.8 prohibits challenges to the award or recession of ECCs in any motion for postconviction relief. This is incorrect, as section 217.703.8 provides: "The award or rescission of any credits earned under this section shall not be subject to appeal or *any motion for postconviction relief*." (Emphasis added). The State's interpretation that "any motion for postconviction relief" includes a petition for a writ of habeas corpus is without authority. The court of appeals has held this language bars review of ECCs in proceedings under Rules 24.035 and 29.15, but the court of appeals has held review of claims regarding ECCs is permissible in a habeas corpus proceeding. *State ex rel. Schmitt v. Hayes*, 583 S.W.3d 73, 83-84 (Mo. App. 2019); *State ex rel. Hawley v. Chapman*, 567 S.W.3d 197, 205-06 (Mo. App. 2018).[5] This Court

---

[5] Each of these cases concluded section 217.703.8's prohibition does not apply to habeas corpus because the legislature cannot restrict habeas corpus. *Hayes*, 583 S.W.3d at 83 ("Section 217.703.8 cannot block the entry of habeas corpus relief because the General Assembly has no power to circumscribe such relief."); *Chapman*, 567 S.W.3d at 205 ("Section 217.703.8 cannot prevent the entry of habeas relief because the General Assembly has no power to restrict habeas relief."). This issue need not be reached because the legislature did not mean to include habeas corpus proceedings when it included "any motion for postconviction relief" in section 217.703.8.

6

agrees section 217.703.8 precludes review of ECCs in postconviction proceedings under Rules 24.035 and 29.15.

The statute, however, does not prevent a challenge in habeas corpus to the award or rescission of credits earned. The State contends habeas corpus is part of Missouri's unitary postconviction process because Rules 24.035 and 29.15, which provide the "exclusive procedure" for those seeking the relief for the claims enumerated in those rules, are carve-outs of the authority of habeas corpus. The State posits, when the legislature prohibited challenges to the calculation of ECCs in "any motion for postconviction relief," the prohibition must necessarily have included habeas corpus. This argument fails to recognize the distinction between Rules 24.035 and 29.15 and habeas corpus.

A claim that a person's detention violates the constitution or laws of the state or federal government may require a writ of habeas corpus to be issued. *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 214 (Mo. banc 2001).[6] When that claim follows a conviction,

---

[6] The dissent argues habeas corpus is not a substitute for a failure to object to circuit court error. *Slip op.* at 3. This rough interpretation misconstrues the concept of habeas corpus. The failure to raise an issue or otherwise object at a revocation hearing is irrelevant when the circuit court lacks authority to revoke probation. Unlike in *State ex rel. Nixon v. Sprick*, 59 S.W.3d 515, 519-20 (Mo. banc 2001), in which the end result of the failure to object resulted in a punishment that nevertheless fell within the appropriate range, the failure to advise the circuit court or otherwise object here resulted in the revocation of Jonas' probation when the circuit court no longer had authority to revoke probation, as will be developed *infra*. Because the sentence imposed was unlawful, habeas relief is appropriate.

Although habeas corpus claims are procedurally barred if a petitioner could have raised those claims on direct appeal or in postconviction proceedings, *State ex rel. Kelly v. Inman*, No. SC 97744, 2020 WL 203148, at *2 (Mo. banc Jan. 14, 2020), Jonas' claim is not procedurally barred. Because he was challenging the calculation of ECCs, Jonas was unable to appeal or use any motion for postconviction relief. Section 217.703.8.

7

relief through a motion under Rules 24.035 and 29.15 is possible. *Id.* Proceedings pursuant to Rules 24.035 and 29.15 "compel a defendant to raise claims that, before the enactment of these postconviction rules, might have been raised in a petition for *habeas corpus* relief." *Id.* In this sense, "[p]ost-conviction remedies [i.e., relief pursuant to Rules 24.035 and 29.15] are designed to provide a 'single, unitary, post-conviction remedy, to be used in place of other remedies,' including the writ of *habeas corpus*." *Id.* (quoting *Wiglesworth v. Wyrick*, 531 S.W.2d 713, 719 (Mo. banc 1976)). A proceeding in which a person seeks a writ of habeas corpus is distinct from a proceeding in which a person seeks postconviction relief. The phrase "any motion for postconviction relief" in section 217.703.8 does not encompass habeas corpus.[7] Section 217.703.8 does not prohibit a challenge to the calculation of ECCs in habeas corpus.

## II. *Jonas Accrued Sufficient ECCs for Early Discharge, Pending Fulfillment of Restitution*

Jonas and the State disagree regarding the calculation of ECCs. Jonas argues that, by the time his probation officer attempted to suspend his probation in January 2016, he was already entitled to discharge because he had accrued sufficient ECCs, in addition to time served, to satisfy his probation term and had paid off his restitution. The State maintains this case turns on the interpretation of the 60-day notice provision, but, moreover, it argues the calculation of ECCs by the division of probation and parole is

---

[7] The State's argument also overlooks the plain terminology of the Court's rules. Nothing in Rule 91, the rule governing habeas corpus, suggests that the legislature would consider a petition for a writ of habeas corpus to be a "motion for postconviction relief." On the other hand, Rules 24.035 and 29.15 specifically detail the form of motion to be filed.

controlling, citing section 217.703.9 and *State ex rel. Jones v. Eighmy*, 572 S.W.3d 503, 506 n.3 (Mo. banc 2019).[8] The State finds controlling the division of probation and parole's last calculation of ECCs, which placed Jonas' earned and optimal discharge date 60 days after the date on which the case summary report and field violation report were prepared in mid-January 2016.[9]

The division of probation and parole has the duty to award ECCs. Section 217.703.1 ("The division of probation and parole *shall award* earned compliance credits to any offender who" meets the statutory requirements. (emphasis added)); *see also Eighmy*, 572 S.W.3d at 507 ("The requirements for the award of ECCs are not discretionary."). This Court previously has deferred to the division of probation and parole's calculation of credits when variations in computations existed between the division, the State, and the probationer. *See Eighmy*, 572 S.W.3d at 506 n.3; *State ex rel. Coleman v. Wexler Horn*, 568 S.W.3d 14, 19-20 (Mo. banc 2019). These cases, however, do not stand for the proposition that this Court would rubberstamp the award or calculation of ECCs when the division of probation and parole improperly calculates a discharge date. Here, the division of probation and parole failed to reflect any accrued ECCs in its June 2015 case summary report, even though Jonas was in "compliance," as that term was defined in section 217.703.4. *See Coleman*, 568 S.W.3d at 19. The

---

[8] Although the State's brief cites this subsection and the footnote in *Eighmy*, neither source goes so far as to deem the division of probation and parole's calculation controlling if incorrect.
[9] This discharge date was four months after Jonas paid restitution. The State also points to another case summary report from June 2015, which states Jonas would remain under supervision without providing a discharge date.

division of probation and parole's last calculation of the discharge date through ECCs was improper as it was not in accordance with section 217.703.7.

The division of probation and parole's award of ECCs through the framework of 217.703 has been satisfactorily detailed in prior opinions. *See Eighmy*, 572 S.W.3d at 505-06; *Coleman*, 568 S.W.3d at 16-17; *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 603-04 (Mo. banc 2019); *State ex rel. Amorine v. Parker*, 490 S.W.3d 372, 374-75 (Mo. banc 2016). In particular, section 217.703.1 mandates that the division of probation and parole award ECCs to offenders who meet certain statutory requirements. [10]

By April 2015, Jonas' actual time on probation and accrued ECCs would have entitled him to discharge under the terms of section 217.703.7, which states:

> [O]nce the combination of . . . time served on probation . . . and earned compliance credits satisfy the total term of probation, . . . the . . . sentencing court shall order final discharge of the offender, so long as the offender has completed at least two years of his or her probation . . . .[11]

---

[10] The dissent delves into a discussion premised on the concept that "legal entitlement to ECCs is not the same as the division actually awarding sufficient ECCs to warrant early discharge." *Slip op.* at 4-6. This Court has previously relied on a calculation of an optimal discharge date when no intervening occurrence would have tolled ECCs. *See Amorine*, 490 S.W.3d at 375 (relying on compliance following the calculation of an optimal discharge date to find probationer should have been discharged on that date). Here, the November 20, 2013, field violation report calculated an optimal discharge date of April 19, 2015, at the latest. There were no occurrences between that report and the optimal discharge date to toll ECCs. Like in *Amorine*, the Court is relying on a previous determination of the division of probation and parole to award ECCs while the probationer remains in compliance.

[11] Jonas' term of probation was five years, or 1,825 days. He served 172 days of probation in 2012, 365 days in 2013, 365 days in 2014, and 90 days in 2015 by the end of March, for a total of 992 days. In terms of accrued ECCs, he received 30 days for each calendar month of compliance, beginning in October 2012. *See* section 217.703.3. Between October 2012 and March 2015, 30 months total, Jonas was not in compliance two months. *See* section 217.703.4. Credits did not accrue during those calendar months in which a violation report was submitted or a motion to revoke or suspend was filed. Section 217.703.5. ECCs remained suspended pending a hearing. *Id*. But because no hearings were held, Jonas was deemed to be in compliance and earned ECCs on the first day of the next calendar month following the initial filing. *Id*. Again:

10

Although the combination of time served on probation and accrued ECCs satisfied the total term of probation by April 2015, this Court clarified in *Hillman* that a probationer must pay court-ordered restitution in full before discharge from probation. 566 S.W.3d at 608 ("A probationer *may accrue* ECCs under section 217.703.3, but she *may not be discharged from probation by applying* those ECCs to shorten her term of probation under section 217.703.7 *unless and until* she pays any court-ordered restitution in full pursuant to section 559.105.2." (emphasis added)).[12] Jonas' last payment toward restitution was received by the prosecuting attorney's office on November 2, 2015. The division of probation and parole received notice of the payment on November 4, 2015. On November 5, 2015, the State withdrew its pending motion to suspend and revoke probation. At that point, because Jonas had accrued sufficient ECCs and had paid restitution, pursuant to section 217.703.7, the court should have discharged him.[13]

---

> [O]nce the combination of . . . time served on probation . . . and earned compliance credits satisfy the total term of probation, . . . the . . . sentencing court shall order final discharge of the offender, so long as the offender has completed at least two years of his or her probation . . . .

Section 217.703.7. By the end of March 2015, Jonas was in compliance for 28 months and accrued 840 days of ECCs. The 992 days of actual time on probation plus 840 days of ECCs – the last 30 days of which would have been awarded April 1, 2015 – exceeds the 1,825 days required for the term of probation.

[12] In 2018, section 217.703.7 was amended to include the additional requirement that the offender complete restitution. Section 217.703.7, RSMo Supp. 2018.

[13] The dissent argues Jonas should have sought a writ of mandamus at this point. *Slip op.* at 6 n.1. This issue is not before the Court. It is true this Court bars claims in habeas corpus that are cognizable on direct appeal or in postconviction proceedings, *State ex rel. Simmons v. White*, 866 S.W.2d 443, 445-46 (Mo. banc 1993), but the dissent offers no support for its claim that habeas corpus would be eliminated if the petitioner did not first seek the remedy of a writ of mandamus. In *State ex rel. White v. Davis*, the court of appeals held, "We have found no case holding that *habeas* is not proper if other extraordinary relief such as prohibition is available, and we find no sound policy reason for so restricting *habeas* relief." 174 S.W.3d 543, 548 (Mo. App. 2005).

### III.     The Division of Probation and Parole's Failure to Timely Provide 60 Days' Notice Is Not Controlling

The State argues that, despite the alleged satisfaction of all components of section 217.703.7 and payment of all restitution owed, the act of notifying the circuit court and prosecuting attorney pursuant to section 217.703.10 is required before discharge.   Section 217.703.10 provides:

> No less than sixty days before the date of final discharge, the division shall notify the sentencing court, the board, and, for probation cases, the circuit or prosecuting attorney of the impending discharge.  If the sentencing court, the board, or the circuit or prosecuting attorney upon receiving such notice does not take any action under subsection 5 of this section, the offender shall be discharged under subsection 7 of this section.

The State contends that, once other probation conditions are met, this subsection requires 60 days' notice to the circuit court and prosecuting attorney before a probationer is discharged early by ECCs.

The division of probation and parole's failure to timely provide the 60 days' notice is not controlling.   Although the statute anticipates the division of probation and parole will provide notice, its failure to act will not work to extend the date of final discharge.  Final discharge is derived by applying section 217.703.7. Although unfulfilled restitution may prevent application of ECCs in section 217.703.7, once restitution is completed, the circuit court is divested of its authority to revoke probation when sufficient ECCs have

---

Although the discussion in *White* centered on the propriety of a writ of habeas corpus in lieu of a writ of prohibition, the analysis in *White* is useful here: seeking other forms of extraordinary relief – prohibition or mandamus – is not required to leave available the option of seeking a writ of habeas corpus.  *See id.* at 547-48.

12

accrued.[14] The interplay of sections 217.703 and 559.036.8 compels this outcome. Section 559.036.8 provides, "The power of the court to revoke probation shall extend for the duration of the term of probation designated by the court and for any further period which is reasonably necessary for the adjudication of matters arising before its expiration." Section 217.703.3 dictates that ECCs reduce the term of probation. Here, accrued ECCs reduced Jonas' term of probation to April 2015. Once the restitution was paid, the combination of time served on probation and application of the ECCs triggered discharge under section 217.703.7. After this, the circuit court did not have authority to revoke Jonas' probation. If the division of probation and parole overlooks its duty to provide notice, final discharge cannot be delayed, as this notice is not a condition precedent to a probationer's discharge.

Despite the dissent's argument, this Court is not expanding the duties and responsibilities of circuit court judges in probation revocation proceedings beyond the requirements of the law: sections 217.703 and 559.036.8 compel, as a matter of law, the outcome here. Any concern of increased burden raised by the dissent, *slip op.* at 2, 6-7, is ameliorated by the division of probation and parole adhering to section 217.703.[15]

---

[14] Of course, *prior to* the payment of full restitution, the circuit court could revoke probation, even though sufficient ECCs exist. Here, the motion to revoke that was pending when restitution was paid was premised on a failure to pay restitution and not failure to comply with any other probation conditions. The circuit court granted the State's motion to withdraw it. Although failure to complete REACT was cited as a reason for the revocation of probation, this failure was not recognized until after restitution was paid and the conditions of section 217.703.7 were met.

[15] The dissent hypothesizes: "The practical effect of this ruling will require circuit courts to calculate and determine whether sufficient ECCs have accrued to warrant discharging a probationer before every probation revocation hearing, even if the probationer does not raise or argue the issue." *Slip op.* at 2. This is not true. Absent an error in reporting, as was the case here, the circuit court can rely on the reporting of the division of probation and parole. The

13

**Conclusion**

By operation of section 217.703.7, Jonas' discharge from probation should have preceded the State's attempt to revoke probation and the circuit court's subsequent suspension and revocation of his probation. Habeas relief is granted; Jonas is to be discharged from the Missouri Department of Corrections' custody.

_____
Mary R. Russell, Judge

Draper, C.J., Breckenridge and Stith, JJ., concur;
Powell, J., dissents in separate opinion filed;
Fischer and Wilson, JJ., concur in opinion of Powell, J.

---

dissent's characterization of the ECC calculation as complex, *slip op.* at 6, belies the truth that it merely requires an examination of a calendar, reference to entries on the court's docket, and subtraction. If the issue is raised in habeas corpus, courts are fully capable of ensuring compliance with this calculation.

14



# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. TRAVIS JONAS,       )
                                                )
               Petitioner,          )
                                                )
v.                                     )         No. SC97674
                                                )
DEAN MINOR,                   )
                                                )
              Respondent.     )

## DISSENTING OPINION

I respectfully dissent. On a good day, the privilege of being a trial judge is a challenging job. Among their numerous duties and responsibilities, Missouri's trial judges juggle the concerns and needs of litigants, attorneys, victims, witnesses, jurors, and court staff, all while addressing the important legal issues that come before the court. Today, this Court needlessly makes this challenging endeavor even more difficult by expanding trial judges' duties and responsibilities in probation revocation proceedings beyond the requirements of the law.

Travis Jonas seeks a writ of habeas corpus, arguing the circuit court lacked authority to revoke his probation because he accrued enough earned compliance credits (ECCs) to entitle him to discharge before the circuit court revoked his probation. But Jonas did not make this argument to the circuit court at his probation revocation hearing. Because Jonas

could have raised his instant claim at his probation revocation hearing, his petition for a writ of habeas corpus is procedurally defaulted. Furthermore, Jonas has not demonstrated the division of probation and parole, the entity statutorily responsible for administering the ECC scheme, actually awarded sufficient ECCs to entitle him to discharge before the circuit court revoked his probation. Nonetheless, the principal opinion grants Jonas writ relief. The practical effect of this ruling will require circuit courts to calculate and determine whether sufficient ECCs have accrued to warrant discharging a probationer before every probation revocation hearing, even if the probationer does not raise or argue the issue. Because the law does not require circuit courts to carry this additional burden, this Court should quash this writ.

I.

"Habeas corpus is the last judicial inquiry into the validity of a criminal conviction and serves as a bulwark against convictions that violate fundamental fairness." *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 545 (Mo. banc 2003) (internal quotations omitted). Because habeas corpus is a secondary collateral attack to a presumptively valid criminal judgment, habeas relief is necessarily narrow to prevent "unending challenges to final judgments," *id.* at 546, reflecting the deep respect typically afforded to final criminal judgments. *See Amrine*, 102 S.W.3d at 549 (Wolff, J., concurring). For these reasons, courts should deny habeas relief "if the petitioner raises procedurally barred claims that could have been raised at an earlier stage." *Id*. at 546; *see also State ex rel. Nixon v. Sprick*, 59 S.W.3d 515, 519 (Mo. banc 2001) (holding "[h]abeas corpus is not a substitute" for "a failure to object to trial court error").

2

Jonas never advised the circuit court or otherwise objected that his probation had expired by operation of ECCs before the court revoked his probation. After he paid restitution and before or at his probation revocation hearing, Jonas could have argued, as he does in this habeas action, that he had accrued enough ECCs to warrant early discharge and the circuit court lacked authority to revoke his probation. Raising this issue prior to the probation revocation hearing could have avoided the necessity of this habeas action entirely by giving the division an opportunity to properly calculate and award Jonas the ECCs to which he now claims entitlement under the statute. It would have also allowed the circuit court to consider whether Jonas's term of probation had expired by operation of ECCs and, accordingly, whether it lacked the authority to revoke his probation.

But Jonas did not make this argument, nor did he make any mention of ECCs before the circuit court revoked his probation and executed his sentence. Indeed, Jonas' counsel conceded during argument on the State's motion to revoke that, on the day of the hearing—May 11, 2017—Jonas had "completed **almost all** of his probation," and his counsel went on to state he believed Jonas's probation "was set to expire in July of [2017]." (Emphasis added). Jonas did not object or otherwise raise the issue of ECCs with the circuit court in any respect during his revocation hearing. Because the issue of early discharge by operation of ECCs "could have been raised at an earlier stage" and the extraordinary writ of habeas corpus is not a substitute for "a failure to object to trial court error," Jonas' instant habeas action is procedurally barred. *Amrine*, 102 S.W.3d at 546; *Sprick*, 59 S.W.3d at 519.

3

## II.

Furthermore, even if Jonas was legally entitled to sufficient ECCs to warrant early discharge, the circuit court did not lack authority to revoke his probation because ECCs are not automatically awarded to reduce a probationer's term of probation. Although a probationer is legally entitled to ECCs for every month he or she is "[i]n compliance with the conditions of supervision imposed by the sentencing court or board," § 217.703.1(4), the division of probation and parole still must "award earned compliance credits to any offender who" satisfies the statutory criteria. § 217.703.1. While ECCs may "accrue" automatically in the sense that some probationers become legally entitled to ECCs for every month that they are in compliance with their terms of supervision, ECCs are not automatically awarded as a matter of law to reduce the probationer's term of probation. Rather, the division of probation and parole must affirmatively award ECCs to a probationer before ECCs may be applied to shorten the probationer's term of supervision. In other words, legal entitlement to ECCs is not the same as the division actually awarding sufficient ECCs to warrant early discharge.

The principal opinion correctly recognizes the division "has the duty to award ECCs," *slip op.* at 9, and that awarding ECCs to probationers who satisfy the statutory criteria is mandatory. *Slip op.* at 10; *see also* § 217.703.1 (providing the division "shall" award ECCs to eligible probationers); *Bauer v. Transitional Sch. Dist. of City of St. Louis*, 111 S.W.3d 405, 408 (Mo. banc 2003) (observing the term "shall" typically indicates mandatory action). But immediately after recognizing it is *the division's* duty to award ECCs that accrue by operation of a probationer staying in compliance with his or her terms

4

of supervision, the principal opinion effectively shifts to the circuit court this responsibility to calculate and award ECCs. By holding Jonas was entitled to immediate discharge from probation by operation of ECCs the instant he completed restitution, without considering whether the division actually awarded Jonas his accrued ECCs, the principal opinion conflates legal entitlement to ECCs with the actual award of ECCs, effectively holding ECCs apply automatically. What is more, the principal opinion essentially places the duty and responsibility on the circuit court to recognize, calculate, and award ECCs that should have been awarded by the division before revoking a probationer's term of probation. This result clearly violates both the plain language of section 217.703.1 and the broader intent of the ECC scheme overall.

This Court presumes "the legislature intended that every word, clause, sentence, and provision of a statute have effect," and, relatedly, that "the legislature did not insert idle verbiage or superfluous language in a statute." *Hyde Park Housing P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993). Chapter 217 does not define the term "award" as it is used in section 217.703. When a term is not defined by statute, this Court will give the term its "plain and ordinary meaning as derived from the dictionary." *Mo. Pub. Serv. Comm'n v. Union Elec. Co.*, 552 S.W.3d 532, 541 (Mo. banc 2018).

The dictionary defines the term "award," in pertinent part to mean "to confer or bestow upon." WEBSTER'S THIRD NEW INT'L DICT. 151 (3d ed. 2002). In the statutory context, therefore the term "award," is an active verb indicating the need for the division to take some affirmative action before ECCs become effective to shorten a probationer's term. If ECCs applied automatically and the circuit court was responsible for recognizing

5

and calculating ECCs then the division would not need to "award" ECCs. But section 217.703 instead specifically requires the division "to confer" or "to bestow" ECCs upon eligible probationers who have satisfied the statutory criteria for earning ECCs. Section 217.703.1(2) charges the division, therefore, not the circuit court, with calculating and awarding ECCs to eligible probationers. Only after the division actually awarded Jonas his ECCs would he be entitled to early discharge. Until then, the circuit court retained authority to revoke his probation because his term had not yet expired.[1]

## Conclusion

The calculation and awarding of ECCs is a complex matter that section 217.703 charges the division, not the circuit courts, with executing. The practical effect of the principal opinion shifts this burden to the circuit courts by requiring them to calculate ECCs

---

[1] Of course, because the duty to award ECCs imposed by section 217.703 is mandatory, Jonas could and should have sought mandamus to compel the division to award ECCs he legally accrued the instant he completed his restitution if he believed the division failed to discharge this mandatory duty. "The purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty." *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019). "To be granted relief by mandamus, a litigant must allege and prove he has a clear, unequivocal, specific right to a thing claimed." *State ex rel. Robinson v. Lindley-Myers*, 551 S.W.3d 468, 474 (Mo. banc 2018) (internal quotations omitted).

Section 217.703.1 provides probationers who meet the statutory criteria "shall" be awarded ECCs for every month the probationer remains in compliance with the terms of their probation. This sets forth a "clear, unequivocal, specific right" to ECCs in that circumstance. *Robinson*, 551 S.W.3d at 474.

As set forth in Part I, this Court should refrain from issuing a writ of habeas corpus "when an alternative remedy is available from a lower court." *State ex rel. Kelly v. Inman*, SC97744, 2020 WL 203148, at *4 (Mo. banc Jan. 14, 2020) (Powell, J., dissenting); *Clay v. Dormire*, 37 S.W.3d 214, 217 (Mo. banc 2000) ("[C]ourts are not required to issue this extraordinary writ where other remedies are adequate and available."). Because Jonas had available to him the writ of mandamus to compel the division to perform its mandatory duty to award ECCs yet did not seek mandamus, this Court should not grant Jonas habeas relief.

before revoking a term of probation. Requiring circuit courts to carry this burden is especially troublesome in cases like this in which the probationer failed to even raise the issue of ECCs or otherwise object to the circuit court's authority to revoke his probation. Moreover, ECCs do not apply automatically, and a circuit court does not lose the authority to revoke a term of probation the instant a probationer becomes legally entitled to receive sufficient ECCs to warrant early discharge. Rather, the division must first award ECCs and apply those ECCs to shorten a probationer's term before the probationer may become eligible for early discharge.

Because Jonas did not raise the issue of ECCs before the circuit court revoked his probation and did not establish the division actually awarded sufficient ECCs to entitle him to early discharge, his claim is both procedurally barred and substantively meritless. For these reasons, I respectfully dissent.

_____
W. Brent Powell, Judge

7