Mary R. Russell, Judge
Relator, April Coleman, seeks a writ of prohibition preventing the circuit court *15 from taking any action in this case other than discharging her from probation.
During Coleman's term of probation, the division of probation and parole issued four notices of citation, none of which resulted in the issuance of probation violation warrants or the suspension of Coleman's probation. The division issued a field violation report in June 2016 resulting in the circuit court suspending Coleman's probation and issuing a capias warrant for her arrest. A probation violation hearing was scheduled for February 2018. Coleman filed a motion to be discharged from probation, which the circuit court overruled. This Court issued a preliminary writ.
Based on the record, the notices of citation were not "initial violation reports" or "violation reports" pursuant to section 217.703.[1] The division's issuances of notices of citation did not stop the accrual of earned compliance credits (ECCs) pursuant to section 217.703 because Coleman was not out of compliance with the terms of her probation. After the May 2016 optimal discharge date, the circuit court did not have the authority in February 2018 to hold a probation revocation hearing, and further, the circuit court should have discharged Coleman from probation. This Court makes permanent its preliminary writ of prohibition.
Background
Coleman pleaded guilty to one count of the Class C felony of distribution of a controlled substance in October 2013. She was given a suspended imposition of sentence and placed on five years' probation under the supervision of the division of probation and parole.
From January 2014 to September 2014, the division filed with the circuit court three case summary reports. Each listed Coleman's optimal discharge date as May 1, 2016, indicating she would be discharged from her probation on this date should she be awarded ECCs during each month of her probation. In April 2015, the division issued the first document titled "Notice of Citation." In the notice, Coleman was cited for a positive urinalysis for tetrahydrocannabinol (THC) and nonpayment of monthly intervention fees. Later that month, the division issued a fourth case summary report, in which Coleman's optimal discharge date remained May 1, 2016. The division issued three more notices of citation in November 2015, February 2016, and April 2016. In the November 2015 notice, Coleman was cited for testing positive for THC and failing to report as directed. In the February 2016 and April 2016 notices, Coleman was cited for admitting to the use of marijuana and failing to report as directed. No probation violation warrants were issued as a result of any of the notices of citation.
In June 2016, the division issued a document titled "Field Violation Report," which was filed with the court in August. The report did not include an earned or optimal discharge date but noted an earned discharged date would be established when Coleman paid her restitution in full. The report further noted that Coleman would not be awarded ECCs until her costs were paid. The probation officer recommended "capias, suspension" and provided that a probation violation warrant would be issued. The circuit court issued an order suspending Coleman's probation and ordering issuance of a capias warrant for her arrest. The order set a revocation hearing for September. On the date of the hearing, the circuit court took notice the warrant had not been served, and the cause was passed generally pending service of the warrant.
*16 A probation violation hearing was scheduled for February 2018. Before the hearing, Coleman filed a motion to be discharged from probation, arguing the circuit court lacked authority to have suspended her probation. Coleman argued that under section 217.703 she was entitled to ECCs during the four months the division issued a notice of citation, effectuating her discharge in May 2016, prior to both the submission of the field violation report and order suspending her probation. The circuit court issued an order overruling Coleman's motion, which determined a notice of citation has the same meaning as a "violation report" for purposes of section 217.703. The circuit court rescheduled the probation revocation hearing.
Coleman filed a petition for a writ of prohibition or, in the alternative, a writ of mandamus in the court of appeals, seeking to bar the circuit court from holding a probation violation hearing and from taking any action other than discharging her from probation. The court of appeals denied Coleman's petition. This Court issued a preliminary writ. Coleman now seeks a permanent writ of prohibition from this Court barring the circuit court from holding a probation violation hearing and from taking any action in this case other than discharging her from probation.
Jurisdiction and Standard of Review
This Court has jurisdiction to "issue and determine original remedial writs." Mo. Const. art. V, sec. 4. A writ of prohibition may issue to: (1) "prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction;" (2) "remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended;" or when (3) "a party may suffer irreparable harm if relief is not granted." State ex rel. Strauser v. Martinez , 416 S.W.3d 798, 801 (Mo. banc 2014).
Analysis
This case presents the question whether the issuance of notices of citation to Coleman resulted in her remaining in compliance for purposes of the division's calculation of ECC accrual. The division issued to Coleman notices of citation in April 2015, November 2015, February 2016, and April 2016. The awarding of ECCs is governed by section 217.703.
Section 217.703.1 provides:
1. The division of probation and parole shall award compliance credits to any offender who is:
(1) Not subject to lifetime supervision ...
(2) On probation, parole, or conditional release for [certain offenses, including distribution of a controlled substance];
(3) Supervised by the board; and
(4) In compliance with the conditions of supervision imposed by the sentencing court or board.
(Emphasis added).
There is no dispute Coleman met the requirements in section 217.703.1(1), (2), and (3). The issue is whether, under section 217.703.1(4), Coleman was "[i]n compliance with the conditions of supervision imposed by the sentencing court or board." If Coleman was "in compliance" from the beginning of her probation in November 2013 through April 2016, then, pursuant to section 217.703.3,[2] she accrued sufficient *17 ECCs to reduce her five years' probation term by 30 months and effectuate her discharge in May 2016. After that date, the circuit court lacked authority to revoke her probation. See Strauser , 416 S.W.3d at 801 ("When the probation term ends, so does the court's authority to revoke probation.").
To determine the meaning of "in compliance," section 217.703.4 and section 217.703.5 are instructive. Section 217.703.4 provides, "For the purposes of this section, the term 'compliance' shall mean the absence of an initial violation report submitted by a probation or parole officer during a calendar month, or a motion to revoke or motion to suspend filed by a prosecuting or circuit attorney, against the offender." (Emphasis added). Further, section 217.703.5 provides, "Credits shall not accrue during any calendar month in which a violation report has been submitted or a motion to revoke or motion to suspend has been filed ...." (Emphasis added).
Neither a motion to revoke nor a motion to suspend was filed in Coleman's case prior to her optimal discharge date in May 2016. But the parties dispute whether the division submitted an "initial violation report" or "violation report" prior to her optimal discharge date. Although four notices of citation were issued to Coleman prior to her optimal discharge date, she argues the notices of citation were neither initial violation reports nor violation reports, as used in section 217.703.4 or 217.703.5. Accordingly, she asserts she was in compliance pursuant to section 217.703.1(4) and was entitled to ECCs for all the months during her probation term from November 2013 through April 2016 to shorten her probation and effectuate her discharge in May 2016 pursuant to section 217.703.3. Coleman argues the circuit court lacked authority to suspend her probation after May 2016.
I. Notice of Citation vs. Field Violation Report
During Coleman's probationary term, she was issued four notices of citation, and a month after her optimal discharge date of May 2016 had passed, she was issued a document titled "Field Violation Report." The content of the notices of citation differed from the field violation report in many respects, including their titles, information conveyed, and overall format. Each notice of citation was designated as such on the docket. The notices of citation were each shorter than one page and included only the basic information regarding the case, the violations eliciting the report, and a "Client Action Plan," which provided instructions such as to abstain from illicit substances, continue to pay court costs and intervention fees, and report as required.
In contrast, the field violation report, totaling three pages of information, was more thorough than the notices of citation. The field violation report included a line near its top stating "Type of Report: Initial," and it was designated as a field violation report on the docket. The field violation report also listed the particulars of Coleman's alleged violation of failing to report as directed, Coleman's statements regarding the alleged violation, and a section listing the past citations. Most importantly, unlike the notices of citation, the field violation report recommended further action by the probation officer, including an "Officer Recommendation" of "capias, *18 suspension" and issuance of a "probation violation warrant."
In this case, the field violation report, in comparison to the notices of citation, had a different function. The four notices of citation did not reference ECCs and did not prompt revocation or suspension of Coleman's probation.[3] But the filing of the field violation report halted Coleman's ECC accrual and resulted in the circuit court suspending Coleman's probation and ordering a capias warrant for her arrest.
Although titled "Field Violation Report," its "Type of Report: Initial" line indicated it was intended to be an initial violation report as provided for in section 217.703.4. It is clear from the record that, in this case, the field violation report differed from the notices of citation in form, substance, and purpose. Only the document titled "Field Violation Report" was an initial violation report as contemplated by section 217.703.4.
The record is devoid of evidence regarding why the division chose to file any of the four notices of citation versus issuing a field violation report whenever Coleman was charged with a probation violation. The violations precipitating each notice of citation were testing positive for THC and nonpayment of monthly intervention fees in April 2015; testing positive for THC and failing to report as directed in November 2015; and admitting to the use of marijuana and failing to report as directed in February 2016 and April 2016. After the four notices of citation were filed, the division issued the field violation report in Coleman's case, listing an alleged violation of the failure to report as directed. That same violation had previously prompted the filing of three of the earlier notices of citation. This Court cannot speculate in this case why the alleged violation of failing to report as directed, which occurred after the filing of four notices of citation, prompted the filing of a field violation report.
Regardless of the division's rationale for filing each document, it is apparent that under the facts of this case, the division and circuit court utilized the two documents differently, as the filing of the notices of citation resulted in no further action against Coleman, while the field violation report resulted in the circuit court suspending Coleman's probation and ordering a capias warrant for Coleman's arrest.[4]
The State argues this Court should find that the notices of citation were violation reports for purposes of section 217.703 because it should not be necessary for a document to be explicitly labeled "initial violation report" to qualify as an initial violation report under section 217.703.4. While a document's title is typically telling of its purpose, the document's form, substance, and purpose are more determinative.
While references to initial violation report and violation report are found in section 217.703.4 and section 217.703.5 respectively, the term "notice of citation" is not mentioned anywhere in the statutes. "Notice of citation" is mentioned once in the code of state regulations in *19 14 CSR 80-5.020(1)(I)(4). This regulation addresses the procedure for collecting offenders' intervention fees and provides, in pertinent part, "When willful nonpayment occurs over a period of ninety (90) consecutive days, the supervising officer shall submit notice of citation or violation report ." 14 CSR 80-5.020(1)(I)(4) (emphasis added). By using both "notice of citation" and "violation report" in the regulation, the department of corrections recognized the existence of these two distinct document types.
The State argues an initial violation report is simply the first report of a particular violation, whether in a notice of citation or a field violation report. To support this assertion, the State cites section 217.718.3, which indicates a "violation report" is "a written report detailing in what manner the offender has violated the conditions on parole, probation, or conditional release and advis[ing] the offender of the right to a hearing before the court or board prior to the period of detention." But section 217.718 does not support the State's position that a notice of citation is an initial violation report pursuant to section 217.703.4 for two reasons. First, the notices of citation did not meet section 217.718.3's description of "violation report" because none of the notices of citation advised the offender of the right to a hearing. Second, section 217.718.3 merely outlines the information the division should give a probationer, including a right to a hearing on the alleged violation. The statute does not mention a notice of citation, much less equate it to an initial violation report for purposes of ECC accrual under section 217.703.
According to the dissent, Coleman was not entitled to ECCs during the months she was issued notices of citation because during these months Coleman was not adhering "to all conditions of supervision imposed by the court or the division." Op. at 23. But this is not required under section 217.703.1(4). Compliance "is not defined as the strict fulfillment of each and every term of probation in a given month but is defined as the absence of an initial violation report or a motion to revoke or suspend." State ex rel. Parrott v. Martinez , 496 S.W.3d 563, 569 (Mo. App. 2016) (citing section 217.703.4). If the legislature intended the division not to award ECCs each time a probationer disobeyed a condition of supervision, it could have so provided. When Coleman was issued notices of citation, she remained in compliance for purposes of ECC accrual under the terms of section 217.703.1(4).
The dissent is correct that, under section 217.703, the division, and not the circuit court, had the duty to calculate and award Coleman's ECCs. Op. at 25-26. While it is the division's duty to award ECCs, the circuit court's ruling that a notice of citation is a "violation report," rendering Coleman to be out of compliance for purposes of ECC accrual, was incorrect as a matter of law. For the reasons above, the notices of citation were not "violation reports" or "initial violation reports" pursuant to section 217.703.4 and 217.703.5. Accordingly, when the division issued notices of citation, Coleman remained in compliance pursuant to section 217.703.1(4).
Further, the record suggests the division adhered to the language of section 217.703 and awarded ECCs when Coleman was issued notices of citation. The final case summary report was issued in April 2015, after the division issued the first notice of citation but before the issuance of the field violation report. This case summary report referenced the earlier notice of citation for failing to pay intervention fees and testing positive for THC. Importantly, it provided that the optimal discharge date remained May 1, 2016, and did *20 not halt Coleman's accrual of ECCs.[5] Additionally, unlike the field violation report, the notices of citation did not reference that ECCs would not be awarded. The field violation report indicated Coleman was no longer in compliance by providing that ECCs would not be awarded until Coleman's court costs were paid in full.[6] In this case, the usage of the notice of citation differed from the field violation report, and as a result, the notices of citation were not initial violation reports or violation reports pursuant to section 217.703. Accordingly, each month that the division issued a notice of citation, Coleman was in compliance pursuant to section 217.703.1(4) and was entitled to ECCs. After Coleman's probation term ended in May 2016, the circuit court lacked authority over her to hold a probation violation hearing. Strauser , 416 S.W.3d at 801.
II. Amendment of Section 217.703.4
The difference between a notice of citation and violation report is further distinguished by a recent statutory change. Subsequent to the events of this case, the legislature amended section 217.703.4, effective August 28, 2018. The amended version provides, "For the purposes of this section, the term 'compliance' shall mean the absence of an initial violation report or notice of citation ...." Section 217.703.4, RSMo 2016 (new language in bold). Under the amended version, in addition to the submission of an initial violation report, submission of a notice of citation has been added to the statute to also indicate when a probationer is not in compliance.
Although the amended version of section 217.703.4 does not apply to this case,[7] the amendment, by naming both documents, demonstrates the legislature viewed the two types of documents differently. Later statutory amendments can reinforce the legislature's intent indicated by the statute's plain language. State ex rel. Jackson Cty. v. Spradling, 522 S.W.2d 788, 791 (Mo. banc 1975) (emphasizing that statutes passed during subsequent legislative sessions can be used to understand the meaning of an earlier statute); Mo. Div. of Employment Sec. v. Labor & Indus. Relations Com'n of Mo. , 637 S.W.2d 315, 318 (Mo. App. 1982) (utilizing legislative history of a statute's amendment to understand the legislature's intent of the earlier version of a statute; holding the decision of the legislature to retain the term "ratio" in the amended version of the statute after the senate had attempted to amend the term to "percentage" indicated the legislature recognized the difference *21 between the two terms). The decision to add "notice of citation" to the statute with the existing term "initial violation report" indicates that notices of citation and initial violation reports do not have the same meaning and are not used interchangeably.
Further, when the legislature amends a statute, that amendment is presumed to change the meaning of the law. Cox v. Dir. of Revenue , 98 S.W.3d 548, 550 (Mo. banc 2003). A recent decision from the court of appeals suggests the legislature changed the law when it amended the statute to provide that issuance of a notice of citation indicates a probationer is not in compliance. State ex rel. Hawley v. Chapman , 567 S.W.3d 197, 204 n.5, 2018 WL 5259204, at *5 n.5 (Mo. App. 2018) ("A lack of Notice of Citation was not included in the definition of compliance until the August 2018 amendments. This suggests that an offender could receive a Notice of Citation and still be in compliance prior to the 2018 amendments.").[8] Though the amended version of section 217.703.4 does not apply to this case, the amendment is helpful in understanding the meaning of the prior, applicable version of section 217.703.4. The applicable version of section 217.703.4 provides that only an initial violation report indicates a probationer is not in compliance. That statute does not mention a notice of citation. Accordingly, when the division issued the notices of citation, Coleman remained in compliance pursuant to section 217.703.4.
Conclusion
Under the record here, the notices of citation were not initial violation reports or violation reports under section 217.703.4 and section 217.703.5. During the months the division submitted a notice of citation, Coleman remained in compliance pursuant to section 217.703.1(4). Because Coleman was in compliance, she was entitled to ECCs each month of her probation until May 2016, when she should have been discharged. A few months later, the circuit court, after reviewing the field violation report, ordered suspension of Coleman's probation and ordered her to appear at a hearing. After May 2016, the circuit court lacked authority over Coleman and could not hold a hearing to revoke her probation. The circuit court's order was incorrect as a matter of law. The circuit court is prohibited from taking any action in this case other than discharging Coleman from probation. This Court makes permanent its preliminary writ of prohibition.
Draper, Breckenridge and Stith, JJ., concur; Powell, J., dissents in separate opinion filed; Fischer, C.J., and Wilson, J., concur in opinion of Powell, J.

All statutory references are to RSMo 2000, unless otherwise specified.

Section 217.703.3 provides:
3. Earned compliance credits shall reduce the term of probation, parole, or conditional release by thirty days for each full calendar month of compliance with the terms of supervision. Credits shall begin to accrue for eligible offenders after the first full calendar month of supervision or on October 1, 2012, if the offender began a term of probation, parole, or conditional release before September 1, 2012.

Further, at oral argument, counsel for Coleman emphasized that it was not common practice in the 24th Judicial Circuit for a notice of citation to trigger the suspension of probation.

Because the division and circuit court utilized the two documents differently, the dissent's argument that it is immaterial whether the board filed a notice of citation or a field violation report is misplaced. Op. at 24-25 n.4. In this case, the division's decision to file a field violation report, rather than a notice of citation, was material as to the resulting actions taken against Coleman.

The dissent emphasizes that this final case summary report provided Coleman's earned discharge date was June 21, 2017. Op. at 25-26. But the earned discharge date merely indicates the number of ECCs accrued up to that point in time. Coleman was entitled to ECCs after the division issued the final case summary report in April 2015 until her optimal discharge date of May 1, 2016.

The dissent argues that the field violation report's October 14, 2018, discharge date suggested the division no longer recognized any accrued ECCs up to that date. Op. at 25. The field violation report provided, in pertinent part, "The court has issued an order prohibiting Coleman from being awarded earned credits until court cost is paid in full. Accordingly, Coleman will not discharge from supervision until 10/14/18. Should Coleman pay restitution in full before this date, an earned discharge date will be established." Importantly, the field violation report did not reference a rescission of prior earned ECCs but explicitly stated that an earned discharge date would be established. Further, the field violation report was filed three months after Coleman should have been discharged from probation.

Because "notice of citation" was added to section 217.703.4 to indicate when a probationer is not in compliance, the issue decided in this case is unlikely to arise in future cases.

The dissent suggests the amendment may have clarified, rather than changed, the law. Op. at 24-25 n.5. But as stated above, the presumption is that the legislature changed the law. Cox , 98 S.W.3d at 550. This presumption has not been overcome in this case, as it was in HillmanandLong , in which the legislature clarified the law because its amendment resolved a conflict between two statutes. State ex rel. Hillman v. Beger and State ex rel. Long v. Copeland , 566 S.W.3d 600, 2019 WL 581183 (Mo. banc 2019) (Nos. SC97171 and SC97331, decided February 13, 2019). Here, there is no such conflict. Had the legislature intended to clarify that a notice of citation was a "violation report," as used in section 217.703.4 and section 217.703.5, it could have so provided. Instead, the legislature amended the statute to state that the issuance of either an initial violation report or a notice of citation indicates an offender is not in compliance.