SUPREME COURT OF MISSOURI
 en banc
MICHAEL HOLMES, ) Opinion issued June 15, 2021
 )
 Respondent, )
 )
v. ) No. SC97983
 )
SARAH STEELMAN and )
ERIC SCHMITT, )
 )
 Appellants. )

 APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
 The Honorable Joan L. Moriarty, Judge

 The commissioner of the office of administration and the attorney general appeal a

judgment in favor of Michael Holmes on his claim that the state legal expense fund (SLEF)

is obligated to pay his 2016 judgment against two former officers of the St. Louis

Metropolitan Police Department (SLMPD). The state claims the circuit court erred in

applying the version of section 105.726.3 in effect in 2003, when the former police officers

filed a false report that caused his wrongful arrest and conviction, rather than the version in

effect when Mr. Holmes filed his claim in a lawsuit against the former officers. Because a

right to payment from SLEF does not arise until a claim is made, section 105.726.3, RSMo

Supp. 2013, governs Mr. Holmes’s claim and prohibits SLEF from paying any claim or
judgment against the police officers. The circuit court’s judgment in Mr. Holmes’s favor is

vacated, and the cause is remanded.

 Factual and Procedural Background

 In 2003, Mr. Holmes was arrested after officers of SLMPD allegedly found cocaine

base at his grandmother’s home. Then-officers Shell Sharp and Bobby Garrett 1 conspired

together to include false information in a police report, stating Mr. Holmes had engaged in

drug-related activities in front of the house and was found in possession of cocaine base inside

the home. As a result of the former officers’ false report, Mr. Holmes was prosecuted for

federal drug crimes. 2 Based in part on the former officers’ testimony at trial, Mr. Holmes was

found guilty and sentenced to 20 years’ imprisonment due to a prior felony drug-trafficking

conviction.

 A subsequent SLMPD investigation into the former officers uncovered misconduct,

including false accusations of drug crimes and fabrication of evidence in other cases. Based

on this new information, Mr. Holmes sought to vacate his sentence, and, in 2011, a federal

court vacated Mr. Holmes’s conviction because the former officers’ testimony had been

discredited. Federal prosecutors decided not to retry the case and dismissed the indictment

against Mr. Holmes.

1
 Mr. Sharp and Mr. Garrett were subsequently removed from the force and, for that reason,
will be referred to as the “former officers” throughout this opinion.
2
 Specifically, Mr. Holmes was charged with and convicted of possession of more than 50
grams of a substance containing cocaine base with intent to distribute (in violation of 21
U.S.C. section 841(a)(1)) and possession of firearms in furtherance of a drug trafficking crime
(in violation of 18 U.S.C. section 924 (c)).
 2
 In December 2012, Mr. Holmes filed a lawsuit in federal court, under 42 U.S.C. section

1983, against the mayor of the City of St. Louis, the board of police commissioners for the

City of St. Louis, and the former officers. In his complaint, he alleged the former officers

wrongfully caused his arrest and prosecution and, as a result, he spent more than five years

wrongfully imprisoned. The federal court dismissed the mayor and the board of police

commissioners on summary judgment, and Mr. Holmes proceeded to trial against only the

former officers. The attorney general’s office represented the former police officers after the

board tendered the defense pursuant to SLEF’s statutory requirements. A jury returned a

verdict of $2.5 million in Mr. Holmes’s favor, finding the former officers in 2003 fabricated

evidence in violation of Mr. Holmes’s due process rights, falsely arrested him, and

maliciously initiated his prosecution. The district court entered its judgment accordingly and

awarded attorney fees and costs.

 Mr. Holmes then sought payment of the judgment from SLEF by means of a demand

letter sent to the attorney general, but payment was denied. In February 2015, Mr. Holmes

filed the present declaratory judgment action against the commissioner of the office of

administration and the attorney general (collectively, the “State”), 3 as well as the City of St.

Louis, the city’s mayor, and members of the St. Louis police board, seeking a declaration that

either the state of Missouri, through SLEF, or, alternatively, the City of St. Louis is obligated

to pay the judgment.

3
 Mr. Holmes’s amended petition for declaratory judgment named Commissioner Doug
Nelson and Attorney General Chris Koster in their official capacities as defendants. They no
longer hold office. Pursuant to Rule 52.13(d), Commissioner Sarah Steelman and Attorney
General Eric Schmitt have been substituted as defendants by operation of law.
 3
 All parties filed motions for summary judgment. In Mr. Holmes’s motion, he sought

a declaration that either the State, through SLEF, or the city is obligated to pay his judgment

against the former officers. The State sought, in its cross-motion for summary judgment, a

declaration that SLEF is not obligated to pay the judgment. In its cross-motion, the city

sought a declaration that it has no obligation to the pay the judgment or, in the alternative,

that Mr. Holmes may collect the judgment from SLEF. The circuit court sustained

Mr. Holmes’s motion for summary judgment and entered judgment in his favor, declaring

that the State, through SLEF, was obligated to pay his judgment against the former officers.

 The circuit court’s grant of summary judgment was based on its findings that (1)

section 105.726.3 excludes SLEF coverage only for the board of police commissioners and

not for police officers and (2) in the absence of section 105.726.3, SLEF covers the former

officers pursuant to section 105.711.2(2). The State appealed, and this Court ordered transfer

after an opinion by the court of appeals. Mo. Const. art. V, sec. 10.

 Standard of Review

 A circuit court’s grant of summary judgment is subject to de novo review on appeal.

Knopik v. Shelby Invs., LLC, 597 S.W.3d 189, 191 (Mo. banc 2020). Summary judgment will

be affirmed when the moving party has established a right to judgment as a matter of law “on

the basis of facts as to which there is no genuine dispute.” Newton v. Mercy Clinic E. Comtys.,

596 S.W.3d 625, 628 (Mo. banc 2020). “This Court reviews the record in the light most

favorable to the party against whom judgment was entered.” Id.

 4
 Analysis

 On appeal, the State claims the circuit court erred in granting Mr. Holmes summary

judgment because, as a matter of law, SLEF coverage does not arise until a claim is made or

a judgment is entered. At the time Mr. Holmes made his claim against the officers, section

105.726.3, RSMo Supp. 2013, prohibited SLEF from paying claims or judgments against

police officers employed by a police board established under chapter 84, RSMo. Mr. Holmes

and the city claim the circuit court correctly applied the statutes in effect in 2003 when the

former officers’ conduct occurred. At that time, section 105.711.2(2), RSMo 2000, provided

for the payment of claims or judgments against the former officers and no other section limited

that provision.

 Determination of which version of the statutes governs Mr. Holmes’s demand for

payment of his judgment against the former officers depends on when the former officers’

rights to payment from SLEF first attached. Sections 105.711 and 105.726 must be examined

to make that determination. Matters of statutory interpretation are questions of law reviewed

de novo. Sun Aviation, Inc. v. L-3 Commc’ns Avionics Sys., Inc., 533 S.W.3d 720, 723

(Mo. banc 2017). The primary goal of statutory interpretation is to discern the legislature’s

intent as evidenced by the text and to consider the words in their plain and ordinary meaning.

Turner v. Sch. Dist. of Clayton, 318 S.W.3d 660, 665 (Mo. banc 2010). In determining the

meaning of words in a statute, the words should not be read in isolation but rather “must

be considered in context and sections of the statutes in pari materia, as well as cognate

sections, must be considered in order to arrive at the true meaning and scope of the words.”

Cosby v. Treasurer of State, 579 S.W.3d 202, 206 (Mo. banc 2019).

 5
 The legislature established SLEF in 1983 to replace the tort defense fund. Cates v.

Webster, 727 S.W.2d 901, 904 (Mo. banc 1987). Moneys in SLEF are used to pay claims or

judgments against the state, its agencies, any officer or employee of the state or its agencies,

and certain other designated individuals and entities. As relevant to this case, the statute

governing payment of claims in 2003, when the officers’ conduct occurred, was section

105.711.2(2), RSMo 2000, 4 which provided:

 Moneys in the state legal expense fund shall be available for the payment of any
 claim or any amount required by any final judgment rendered by a court of
 competent jurisdiction against . . . [a]ny officer or employee of the State of
 Missouri or any agency of the state, including, without limitation, elected
 officials, appointees, members of state boards or commissions and members of
 the Missouri national guard upon conduct of such officer or employee arising
 out of and performed in connection with his or her official duties on behalf of
 the state, or any agency of the state[.]

 In 2003, section 105.726, RSMo 2000, contained only two subsections. Subsection 1

provided the statutes governing SLEF were not intended to broaden the liability of the state

or to abolish or waive any defense at law available to any agency, officer, or employee of the

state; subsection 2 provided the creation of SLEF and payments therefrom were “deemed

necessary and proper public purposes for which funds of this state may be expended.”

Sections 105.726.1-.2, RSMo 2000.

 In 2005, this Court interpreted section 105.711.2(2), RSMo 2000, to find SLEF

provided representation by the attorney general, reimbursement for expenditures in defending

lawsuits, and satisfaction of judgments or settlements pertaining to lawsuits brought against

4
 Because the language of section 105.711.2(2) has remained unchanged since RSMo 2000,
this opinion dispenses with further references to a specific version of the statute, unless
otherwise indicated.
 6
members of the St. Louis board of police commissioners because the board was an agency of

the state. Smith v. State, 152 S.W.3d 275, 278 (Mo. banc 2005). It further found SLEF was

obligated to provide coverage to SLMPD officers because such officers were – and always

had been – officers of the state for purposes of SLEF coverage. Id. at 279.

 In response to Smith’s holding that members of the city’s board of police

commissioners and SLMPD officers were entitled to coverage under SLEF, the legislature

amended section 105.726 to add subsection 3, which provided:

 Moneys in the state legal expense fund shall not be available for the payment of
 any claim or any amount required by any final judgment rendered by a court of
 competent jurisdiction against a board of police commissioners established
 under chapter 84, RSMo, including the commissioners, any police officer,
 notwithstanding section 84.330 and 84.710, RSMo, or other provisions of law,
 other employees, agents, representative, or any other individual or entity acting
 or purporting to act on its or their behalf. Such was the intent of the general
 assembly in the original enactment of section 105.711 to 105.2726, and it is
 made express by this section in light of the decision in Wayman Smith, III, et al.
 v. State of Missouri, 152 S.W.3d 275. Except that the commissioner of
 administration shall reimburse from the legal expense fund any board of police
 commissioners established under chapter 84, RSMo, for liability claims
 otherwise eligible for payment under section 105.711 paid by such boards on
 an equal share basis per claim up to a maximum of one million dollars per fiscal
 year.

105.726.3, RSMo Supp. 2005 (emphasis added).

Subsections 4 and 5 were also added to section 105.726 in 2005. Subsection 4 provided the

attorney general “shall represent, investigate, defend, negotiate, or compromise all claims

under sections 105.711 to 105.726 for the board of police commissioners, any police officer,

other employees, agents, representatives, or any other individual or entity acting or purporting

to act on their behalf,” if requested. Section 105.726.4, RSMo Supp. 2005. Subsection 5

provided:

 7
 Claims tendered to the attorney general promptly after the claim was
 asserted . . . and prior to August 28, 2005, may be investigated, defended,
 negotiated, or compromised by the attorney general and full payments may be
 made from [SLEF] on behalf of the entities and individuals described in this
 section as a result of the holding in [Smith].

Section 105.726.5, RSMo Supp. 2005. Otherwise, “claims against employees of Police

Boards would not be covered by the Fund.” Sherf v. Koster, 371 S.W.3d 903, 907 (Mo. App.

2012).

 Together, sections 105.726.3-.5, RSMo Supp. 2005, prohibit SLEF from paying claims

or judgments against police officers 5 if the claims were tendered to the attorney general after

August 28, 2005. Instead, those claims would qualify only for reimbursement and

representation. Under the reimbursement and representation scheme, SLEF is obligated to

reimburse the board of police commissioners for claims against the entities or individuals

designated in section 105.726.3, including police officers, that are “otherwise eligible for

payment under section 105.711” and paid by the board. Reimbursement for liability claims,

however, is limited to a maximum of $1 million dollars per fiscal year. 6 Finally, for such

5
 The circuit court interpreted the prohibition in section 105.726.3, RSMo Supp. 2005, against
use of moneys in SLEF to pay certain claims and judgments to apply “only to judgments
against a board of police commissioners” and not to judgments against police officers. This
Court disagrees. The circuit court’s interpretation ignores the words after “commissioner” in
the first sentence of the subsection – “any police officers, notwithstanding sections 84.330
and 84.710, RSMo, or other provisions of law, other employees, agents, representative, or any
other individual or entity acting or purporting to act on its or their behalf.” Because this Court
presumes the legislature intended every word to be given effect, State ex rel. Goldsworthy v.
Kanatzar, 543 S.W.3d 582, 585 (Mo. banc 2018), the Court must give effect to the words
“any police officer.”
6
 Section 105.726.3, RSMo Supp. 2005, provided that police boards would be reimbursed for
liability claims “on an equal share basis per claim up to a maximum of one million dollars per
fiscal year.” When it was amended in 2012, however, the provision for reimbursement on an
equal share basis per claim was removed, and it was rewritten to provide reimbursement “for

 8
claims tendered to the attorney general after August 28, 2005, if a board of police

commissioners requests representation, the attorney general is obligated to “represent,

investigate, defend, or compromise all claims under sections 105.711 to 105.726.” Section

105.726.4, RSMo Supp. 2005.

 Mr. Holmes asserts that, despite this interpretation of section 105.726.3, SLEF is

obligated to pay his judgment against the former officers because section 105.711.2(2) says,

“Moneys in the state legal expense fund shall be available . . . upon conduct of such officer

or employee arising out of and performed in connection with his or her official duties on

behalf of the state.” In other words, he claims the phrase “upon conduct of such officer” in

section 105.711.2(2) establishes when a state employee’s right to payment from SLEF arises.

As applied to this case, he claims that language means the former officers had a right to

payment from SLEF when their conduct occurred in 2003. Under this premise, he claims

applying section 105.726.3, RSMo Supp. 2013, to prohibit payment from SLEF would violate

the prohibition against retrospective laws in article I, section 13 of the Missouri Constitution

because the officers had a vested right to payment from SLEF in 2003, before the enactment

of section 105.726.3, RSMo Supp. 2005, eliminated the right to payment.

 Relying on this Court’s holding in Cates, 727 S.W.3d at 904, the State counters the

former officers never had a right to payment of the judgment from SLEF because a right to

payment from SLEF does not arise until a claim is made and Mr. Holmes asserted his claim

well after section 105.726.3 was enacted. Under the State’s theory, “upon” in section

liability claims otherwise eligible for payment under section 105.711 paid by such board up
to a maximum of one million dollars per fiscal year.” Section 105.726.3, RSMo Supp. 2013.
 9
105.711.2(2) does not designate when officers or employees are entitled to payment from

SLEF but rather denotes which claims or final judgments are payable – namely, those based

on conduct performed in connection with official duties on behalf of the state. Accordingly,

the State contends it does not matter that the conduct occurred in 2003 because the earliest

the former officers would have had a right to payment from SLEF would have been when

Mr. Holmes first asserted his claim in December 2012. 7 At that time, section 105.726.3,

RSMo Supp. 2013, prohibited SLEF from paying claims or final judgments against SLMPD

officers. 8

 It is not necessary to engage in statutory construction to resolve the conflict between

Mr. Holmes’s definition of “upon” and that of the State. While in isolation the word “upon”

is susceptible to either meaning, 9 its plain meaning is determined from its “usage in the

7
 In Cates, this Court held “the protection provided an employee under [SLEF] arises when
the claim is made and extends to the time when a judgment might be rendered.” 727 S.W.2d
at 904. The record in this case does not show Mr. Holmes asserted his claim before filing his
federal civil rights suit against the officers in December 2012.
8
 Mr. Holmes and the city assert the State is estopped from denying its responsibility to pay
the judgment because, in asking in federal court to stay enforcement of its judgment and waive
the requirement that the State post a supersedeas bond, the State represented that “the
Judgment will definitely be paid, either by [the State] through its SLEF or by [the city].”
Mr. Holmes claims this earlier representation is inconsistent with the position the State now
takes that SLEF has no obligation to pay the judgment. To be sure, the doctrine of judicial
estoppel prevents a party from taking a position clearly inconsistent with an earlier position.
Vacca v. Mo. Dep’t of Lab. & Indus. Rels., 575 S.W.3d 223, 235 (Mo. banc 2019). The State,
however, has not taken inconsistent positions. It maintains it is not obligated to pay the
judgment through SLEF but the city is. Therefore, the State is not estopped from disclaiming
a duty to indemnify the officers.
9
 The first meaning of “upon” is “on.” Upon, WEBSTER’S THIRD NEW INTERNATIONAL
DICTIONARY UNABRIDGED 2517 (3d ed. 2002). The word “on,” in turn, may be used to
indicate “the source or support or basis on which something (as an action, opinion) turns or
rests” or “position with regard to . . . time.” On, WEBSTER’S THIRD NEW INTERNATIONAL
DICTIONARY UNABRIDGED 1574 (3d ed. 2002).

 10
context of the entire statute.” State ex rel. Goldsworthy v. Kanatzar, 543 S.W.3d 582, 585

(Mo. banc 2018). A court cannot look at single, separate words in a statute and then apply to

each a definition untethered from its context. See Kehlenbrink v. Dir. of Revenue, 577 S.W.3d

798, 800 (Mo. banc 2019).

 Section 105.711.2, RSMo 2000, identified the individuals and entities whom SLEF

would indemnify against claims or judgments, and for some individuals and entities, the

maximum amount that would be paid from SLEF. Four subdivisions specified, generally, that

moneys in SLEF shall be available for payment of claims or final judgments against:

 (1) The state of Missouri or any agency of the state;
 (2) Any officer or employee of the state or an agency of the state, including “elected
 officials, appointees, members of state boards or commissions, and members of the
 Missouri national guard”;
 (3) Certain health care providers; and
 (4) Employees of the juvenile divisions of the judicial circuits.

These subdivisions designated who had a right to SLEF coverage. They did not purport to

designate when that coverage arises. Contrary to Mr. Holmes’s and the city’s arguments,

there is no language in any of the other subdivisions to support their interpretation of section

105.711.2(2), RSMo 2000, as establishing when an individual’s or entity’s right to payment

from SLEF arose. Consistent with the purpose of the other subdivisions of section 105.711.2,

the language of subdivision 2 designates the individuals and entities entitled to SLEF

payments, not the time the right to payment arises.

 Indeed, this Court has held the first act to which section 105.711.2(2) attributes legal

significance is the making of a claim, not the conduct underlying the claim. Cates, 727

S.W.2d at 904. In Cates, after he was named as a defendant in a tort action, a circuit court

bailiff filed a declaratory judgment action to determine whether SLEF provided him with
 11
representation and payment of any claim or any amount required by a final judgment. Id. at

902. The bailiff’s conduct at issue occurred before SLEF was enacted. Id. The threshold

issue before the Court was whether SLEF could apply to events that occurred before it was

enacted. Id. at 904.

 The Court held SLEF covered the bailiff’s prior conduct because “the protection

provided the employee under [SLEF] arises when the claim is made and extends to the time

when judgment might be rendered.” Id. For the same reason, the Court held the application

of SLEF to the underlying tort action against the bailiff was “not retrospective since the

judgment, an act to which certain legal effects are ascribed by section 105.711.2,” occurred

after SLEF’s effective date. Id. The acts “to which certain legal effects are ascribed by section

105.711.2” are the making of a claim or the rendering of a final judgment; therefore, “the

protection provided the employee under [SLEF] arises when the claim is made and extends

to the time when judgment might be rendered.” Id. Whether obiter dictum or not, the Court’s

analysis in Cates is correct. The first act to which section 105.711.2(2) ascribes any legal

significance is the making of a claim, so the right to SLEF payment does not arise until a

claim is made.

 This interpretation is further supported by consideration of the statute’s subsequent

amendment. Section 105.711.5, RSMo 2016, provides:

 In the case of any claim or judgment against an officer or employee of the state
 or any agency of the state based upon conduct of such officer or employee
 arising out of and performed in connection with his or her official duties on
 behalf of the state or any agency of the state that would give rise to a cause of
 action under section 537.600, the state legal expense fund shall be liable,
 excluding punitive damages, for:

 (1) Economic damages to any one claimant; and
 12
 (2) Up to three hundred fifty thousand dollars for noneconomic
 damages.

 The state legal expense fund shall be the exclusive remedy and shall preclude
 any other civil actions or proceedings for money damages arising out of or
 relating to the same subject matter against the state officer or employee, or the
 officer’s or employee’s estate. No officer or employee of the state or any
 agency of the state shall be individually liable in his or her personal capacity for
 conduct of such officer or employee arising out of and performed in connection
 with his or her official duties on behalf of the state or any agency of the state.

(Emphasis added). Section 105.711.5, RSMo 2016, describes the claims or judgments SLEF

will pay as those “based upon” the conduct performed in connection with official duties. It

then references the described conduct as the subject matter for which SLEF “shall be the

exclusive remedy” and for which officers or employees shall not be individually liable. 10

 The dissenting opinion asserts “upon conduct” in section 105.711.2(2) indicates

position in regard to time when read in pari materia with section 84.345.2, RSMo Supp. 2013,

one of the provisions resulting from the adoption of Proposition A at the November 2012

general election. 11 To accomplish the transfer of control of SLMPD from the state to the city,

10
 The dissenting opinion asserts section 105.711.5, RSMo 2016, dramatically changed the
meaning of “upon conduct” in section 105.711.2(2) when it articulated the concept as “based
upon conduct.” If the legislature meant to alter the meaning of “upon conduct” in section
105.711.2(2), it seems likely it would have amended that subdivision rather than removing
any temporal sense from “upon conduct” by articulating the same concept with slightly
different wording later in the same section. The more reasonable interpretation is that the
legislature did not alter the meaning of “upon conduct” in section 105.711.2(2) by enacting
section 105.711.5, RSMo 2016, because it intended all those provisions to refer to the conduct
on which the claim or final judgment is based.
11
 In November 2012, voters passed Initiative Proposition A, which authorized the City of St.
Louis to establish control over its own police force. State ex rel. Hawley v. City of St. Louis,
531 S.W.3d 602, 604 (Mo. App. 2017). Proposition A brought about three statutory changes
relevant to this appeal. First, it led to the enactment of section 84.334, RSMo Supp. 2013,
which gives the city the right to establish its own police force. Id. at 604. Second, Proposition
A enacted section 83.345.2, RSMo Supp. 2013, which addresses how the transfer to city

 13
section 84.345 altered the existing reimbursement and representation scheme of SLEF

coverage of the police board and its officers. See section 84.345, RSMo Supp. 2013.

Specifically, it provided that, for any claim “arising out of actions occurring before the date

of completion of the transfer provided under subsection 2 of section 84.344, the state shall

continue to provide legal representation as set forth in section 105.726, and [SLEF] shall

continue to provide reimbursement for such claims under section 105.726.” Section 84.345.2,

RSMo Supp. 2013 (emphasis added).

 The dissenting opinion asserts this provision “demonstrates the legislature expressly

required SLEF to continue to reimburse for claims or judgments against police officers

pursuant to section 105.726, prior to the transfer of local control to the city, based on when

the underlying conduct occurred.” Section 84.345.2, RSMo Supp. 2013, however, does not

address when SLEF coverage arises. It merely provides SLEF shall continue to provide

representation and reimbursement as required in section 105.726. Section 84.345.2.

 The reimbursement and representation scheme established in sections 105.726.3-.5

provides reimbursement and representation for “claims otherwise eligible for payment under

section 105.711.” Section 105.726.3, RSMo Supp. 2013 (emphasis added). So, section

84.345.2, RSMo Supp. 2013, does not work in tandem with section 105.711 to determine

control affects the reimbursement and representation scheme adopted in the 2005 amendment
to section 105.726. Id. at 605. Finally, Proposition A resulted in a revision to section
105.726.3, which excepted the police board from SLEF reimbursement. Id. After the city
assumed control of the police force in September 2013, it became entitled to reimbursement
for past claims as the board’s successor-in-interest. Section 105.726.3, RSMo Supp. 2013;
State ex rel. Koster v. Kan. City Bd. of Police Comm’rs, 532 S.W.3d 191, 196 & n.6 (Mo.
App. 2017). Whether SLEF may be obligated to reimburse the city for payment of the
judgment “up to a maximum of one million dollars per fiscal year” pursuant to section
105.726.3 is not before this Court.
 14
which claims will be eligible for SLEF payment. That function is committed solely to section

105.711. Rather, section 84.345.2, RSMo Supp. 2013, affects only whether claims for which

reimbursement and representation are available under section 105.726 will continue to be

eligible for reimbursement and representation following the transfer to local control.

 In further support of their assertion that the former officers’ right to payment from

SLEF attaches at the time of their conduct, Mr. Holmes and the city claim SLEF is essentially

an occurrence-based insurance policy that promises indemnity against liability arising from

acts committed during the policy period regardless of when the claim is ultimately asserted.

It is true SLEF has been compared to liability insurance. See Dixon v. Holden, 923 S.W.2d

370, 377 (Mo. App. 1996). In two aspects, it resembles liability insurance: it indemnifies

certain entities against liability, see section 105.711.2, and indemnitees are not required to

first pay a claim or judgment from their own pockets before being entitled to payment from

SLEF, Dixon, 923 S.W.2d at 378. Its likeness to insurance ends there, however, and it has

been affirmatively held that SLEF does not constitute insurance. See Kesterson v. Wallut,

157 S.W.3d 675, 684 (Mo. App. 2004); Casady v. Bd. of Governors of Ne. Mo. State Univ.,

875 S.W.2d 909, 914 (Mo. App. 1994).

 Because the event triggering an officer or employee’s right to indemnity is the making

of a claim or the rendering of a final judgment, the former officers’ entitlement to SLEF

indemnity must be resolved through application of the statutes in effect when Mr. Holmes

first asserted his claim by suing the officers in December 2012. At that time, section

105.726.3, RSMo Supp. 2013, prohibited the fund from paying “any claim or any amount

required by any final judgment rendered . . . against a board of police commissioners

 15
established under chapter 84, including the commissioners, any police officer . . . or any other

individual or entity acting or purporting to act on its or their behalf.” (Emphasis added).

Therefore, the state of Missouri, through SLEF, is not obligated under section 105.711.2(2)

to pay Mr. Holmes’s judgment against the former officers.

 Application of Section 105.726.3 Not Retrospective

 Mr. Holmes claims applying section 105.726.3, RSMo Supp. 2013, to the former

officers would violate the prohibition on retrospective laws in article I, section 13 of the

Missouri Constitution. Article I, section 13 provides that “no ex post facto law, nor law

impairing the obligation of contracts, or retrospective in its operation, or making any

irrevocable grant of special privileges or immunities, can be enacted.” (Emphasis added). A

law is retrospective in its operation if it “impairs some vested right or affects past transactions

to the substantial prejudice of the parties.” La-Z-Boy Chair Co. v. Dir. of Econ. Dev., 983

S.W.2d 523, 525 (Mo. banc 1999). A law is not retrospective, however, “merely because it

relates to or is directed to prior facts or transactions.” Dial v. Lathrop R-II Sch. Dist., 871

S.W.2d 444, 447 (Mo. banc 1994).

 “Before passing judgment on the constitutional [validity] of a statute, this Court must

determine whether plaintiffs have standing to bring the constitutional challenge.” Mo. State

Med. Ass’n v. State, 256 S.W.3d 85, 87 (Mo. banc 2008). Consequently, although the parties

have not raised the issue, this Court must determine at the outset whether Mr. Holmes has

standing to maintain a constitutional challenge to the application of section 105.726.3, RSMo

Supp. 2013, to the former officers.

 16
 Those adversely affected by a statute have standing to challenge its constitutional

validity. Brehm v. Bacon Twp., 426 S.W.3d 1, 5 (Mo. banc 2014). To be adversely affected,

Mr. Holmes must show he has some “legally protectable interest in the litigation so as to be

directly and adversely affected by its outcome,” such as “a pecuniary or personal interest

directly at issue and subject to immediate or prospective consequential relief.” Id. Judgment

creditors, like Mr. Holmes, are entitled to seek satisfaction directly from SLEF. Dixon, 923

S.W.2d at 378. For that reason, a decision deciding whether the former officers are entitled

to payment of the judgment from SLEF necessarily determines whether Mr. Holmes is

entitled to payment from SLEF. Mr. Holmes has a pecuniary interest directly at issue and

subject to immediate relief; therefore, he has standing to challenge the application of section

105.726.3, RSMo Supp. 2013, to his judgment against the former officers as a constitutionally

invalid retrospective law.

 His claim lacks merit, however, because the former officers did not have a right to

payment from SLEF in 2003, when they fabricated evidence against Mr. Holmes. As

discussed above, in 2003 and at all times subsequent, a right to payment from SLEF does not

arise until a claim is made. When Mr. Holmes first asserted his claim in December 2012,

section 105.726.3, RSMo Supp. 2013, was in effect. The former officers never had a right to

payment from SLEF because section 105.726.3, RSMo Supp. 2013, prohibited SLEF from

paying claims or judgments against them when Mr. Holmes first asserted his claim. Although

it relates to prior facts, section 105.726.3, RSMo 2013, is not being applied to rights,

substantive or procedural, that arose before its enactment. Therefore, the application of

 17
section 105.726.3, RSMo Supp. 2013, to Mr. Holmes’s judgment against the former officers

does not violate article I, section 13 of the Missouri Constitution.

 Conclusion

 Mr. Holmes failed to show, as a matter of law, he is entitled to a declaration that the

state is obligated to pay his judgment out of SLEF. The right to payment from SLEF attaches

when a claim is made and, at the time Mr. Holmes first made his claim, section 105.726.3,

RSMo Supp. 2013, prohibited SLEF from paying claims against police officers. Accordingly,

the circuit court’s judgment in favor of Mr. Holmes is vacated, and the cause is remanded.

 ___________________________________
 PATRICIA BRECKENRIDGE, JUDGE

Wilson, Russell, Powell and
Fischer, JJ., concur; Draper, C.J.,
dissents in separate opinion filed.

 18
 SUPREME COURT OF MISSOURI
 en banc
MICHAEL HOLMES, )
 )
 Respondent, )
 )
v. ) No. SC97983
 )
SARAH STEELMAN and )
ERIC SCHMITT, )
 )
 Appellants. )

 DISSENTING OPINION

 The principal opinion’s holding that Shell Sharp’s and Bobby Garrett’s (hereinafter

and collectively, “the former officers”) right to payment from the State Legal Expense

Fund (hereinafter, “SLEF”) did not attach until Michael Holmes (hereinafter, “Holmes”)

made his claim ignores the plain language of section 105.711.2(2), RSMo 2000, 1 and

section 84.345.2, RSMo Supp. 2013, 2 and relies on dicta in reaching this result. I would

affirm the circuit court’s judgment finding the former officers’ right to payment from SLEF

arose from their 2003 conduct. Accordingly, I respectfully dissent.

1
 Because section 105.711 has remained unchanged since 2000, all references will be to
RSMo 2000, the version of the statute in effect at the time the former officers’ conduct
occurred.
2
 All references to sections of chapter 84 are to RSMo Supp. 2013.
 At the time the former officers’ conduct occurred, section 105.711.2(2) provided:

 Moneys in the state legal expense fund shall be available for the payment of
 any claim or any amount required by any final judgment rendered by a court
 of competent jurisdiction against … [a]ny officer or employee of the state
 of Missouri or any agency of the state, including, without limitation, …
 members of state boards or commissions … upon conduct of such officer or
 employee arising out of and performed in connection with his or her official
 duties on behalf of the state, or any agency of the state[.]

(Emphasis added). Holmes contends the availability of SLEF coverage is triggered “upon

conduct” of an officer performing official duties on behalf of the state pursuant to

section 105.711.2(2). Holmes maintains this provision establishes the timing of a state

employee’s entitlement to coverage, arguing that, at the time the former officers engaged

in official conduct in 2003 exposing them to liability, they were entitled to SLEF

protection. The state maintains “upon conduct” does not trigger when a state employee is

entitled to payment from SLEF but signifies that claims and judgments arising from a state

employee’s conduct are entitled to protection. Hence, the state believes the former officers

were not entitled to payment from SLEF until Holmes made his claim in 2012.

 The principal opinion concedes “upon conduct” is susceptible to either meaning

asserted by the parties but chooses to ignore its plain meaning or give the words effect.

“This Court presumes ‘each word, clause, sentence, and section of a statute will be given

meaning and that the legislature did not insert superfluous language.’” City of Aurora v.

Spectra Commc’ns Grp., LLC, 592 S.W.3d 764, 783 (Mo. banc 2019) (quoting

Macon Cnty. Emergency Servs. Bd. v. Macon Cnty. Comm’n, 485 S.W.3d 353, 355

(Mo. banc 2016)). Hence, this Court must give effect to the words “upon conduct” when

reading section 105.711.2(2). “Upon” is defined as “on.” Webster’s Third New Int’l

 2
Dictionary Unabridged 2517 (3d ed. 2002). “On” contains a myriad of definitions, but

relevant to this issue, “on” means “to indicate position with regard to … time; … or at a

set time…; occurrence … or following or as a result of something ….” Id. at 1574. When

applying the plain meaning of “upon” in section 105.711.2(2), it is clear the former

officers’ entitlement to SLEF monies to pay Holmes’ claim arose as a result of their

conduct, which occurred in 2003. 3

 The principal opinion concedes section 105.711.2(2) provided for the payment of

claims or judgments against the former officers and no other section limited that provision

in 2003 when the former officers’ conduct occurred. Moreover, in Smith v. State,

152 S.W.3d 275, 279 (Mo. banc 2005), this Court held SLEF provided coverage to police

officers because, at that time, they were officers of the state pursuant to

section 105.711.2(2). 4 Hence, when giving the words “upon conduct” effect, it is clear the

3
 The principal opinion attempts to bolster its faulty interpretation of “upon conduct” in
section 105.711.2(2) by looking at the subsequent amendment to section 105.711.5,
RSMo 2016. That subsection added the word “based” immediately before the words “upon
conduct” and used the phrase “for conduct,” both which dramatically change the meaning
of “upon conduct” by removing the temporal meaning used in section 105.711.2(2), hence
undermining the principal opinion’s position and demonstrating Holmes’ analysis of the
statute in effect in 2003 is correct. The principal opinion speculates that, if the legislature
meant to alter the meaning of “upon conduct,” it would have amended the subdivision
rather than articulate the same concept with slightly different wording later in the same
section. “[W]hen the legislature amends a statute, that amendment is presumed to change
the meaning of the law.” State ex rel. Coleman v. Wexler Horn, 568 S.W.3d 14, 21 (Mo.
banc 2019). In this case, “slightly different wording” in the 2016 statute makes a difference
in the temporal meaning of the phrase “upon conduct.”
4
 In 2005, the legislature amended section 105.726 after Smith to prohibit SLEF from being
used to pay for claims or judgment incurred by police officers. See section 105.726.3,
RSMo Supp. 2005. This amendment is irrelevant, however, because section 105.711.2(2)
and section 105.726 as written at the time of the former officers’ conduct in 2003 require
SLEF to pay Holmes’ judgment.
 3
former officers were entitled to SLEF monies to pay Holmes’ claim at the time their

conduct occurred in 2003. 5

 Further, when determining legislative intent of a statute, it must be read “in pari

materia with related sections.” City of Aurora, 592 S.W.3d at 783. “Under the doctrine of

in pari materia, statutes relating to the same subject matter should be construed to achieve

a harmonious interpretation.” Roesing v. Dir. of Revenue, 573 S.W.3d 634, 639 (Mo. banc

2019). My interpretation of section 105.711.2(2) is bolstered when examining related

legislation concerning when SLEF monies are available to reimburse claims and judgments

incurred by police officers after the state transferred local control to the City of St. Louis

(hereinafter, “the City”).

 After Missouri voters passed Initiative Proposition A in November 2012, the

legislature enacted section 84.344, which “gave the City the right to establish its own police

force free from state control ….” State ex rel. Hawley v. City of St. Louis, 531 S.W.3d 602,

604 (Mo. App. E.D. 2017). Passage of Initiative Proposition A also led to the enactment

of section 84.345. Id. at 605. Section 84.345.2 provides:

 For any claim, lawsuit, or other action arising out of actions occurring before
 the date of completion of the transfer provided under subsection 2 of section
 84.344, the state shall continue to provide legal representation as set forth in
 section 105.726, and the [SLEF] shall continue to provide reimbursement for

5
 The principal opinion’s reliance on various subdivisions of section 105.711.2 as
designating individuals entitled to SLEF payments effectively reads “upon conduct” out of
subdivision (2), which expressly provides when state officers and employees are entitled
to SLEF payments: “upon conduct of such officer or employee arising out of and
performed in connection with his or her official duties on behalf of the state.”
Section 105.711.2(2) (emphasis added). None of the other subdivisions contain this
qualifying temporal language.

 4
 such claims under section 105.726. This subsection applies to all claims,
 lawsuits, and other actions brought against any commissioner, police officer,
 employee, agent, representative, or any individual or entity acting or
 purporting to act on its or their behalf.

(Emphasis added). “The primary rule of statutory interpretation is to effectuate legislative

intent through reference to the plain and ordinary meaning of the statutory language.”

State ex rel. Valentine v. Orr, 366 S.W.3d 534, 540 (Mo. banc 2012). “When the words

are clear, there is nothing to construe beyond applying the plain meaning of the law.” Id.

(quoting State v. Rowe, 63 S.W.3d 647, 649 (Mo. banc 2002)).

 Although the principal opinion must read section 84.345 separately from sections

105.726 and 105.711 to justify its holding, all three sections must be consulted in pari

materia to determine when a police officer is entitled payment from SLEF.

Section 84.345.2’s plain language clearly demonstrates the legislature expressly required

SLEF to continue to reimburse for claims or judgments against police officers pursuant to

section 105.726, prior to the transfer of local control to the City, based on when the

underlying conduct occurred. Moreover, section 105.726.3 expressly refers to section

105.711 to determine “claims otherwise eligible for payment,” which arises “upon

conduct” of the officer as stated in section 105.711.2(2). It is undisputed the former

officers’ conduct occurred in 2003, well before the transfer of local control to the City, and

Smith held police officers who were under state control were entitled to funds from SLEF

to pay for those claims and judgments. Because the former officers’ conduct occurred

before the state completed the transfer of control to the City, section 84.345.2’s

 5
unambiguous language mandates SLEF shall provide reimbursement for Holmes’

judgment.

 The principal opinion ignores the straightforward language of sections 105.711.2(2)

and 84.345.2, presumably because it undermines its claims-based holding. Instead, the

principal opinion clings to a sentence from Cates v. Webster, 727 S.W.2d 901, 904

(Mo. banc 1987), which states “the protection provided the employee under the [SLEF]

arises when the claim is made and extends to the time when a judgment might be rendered.”

A careful reading of Cates demonstrates this single sentence is dicta and should not be

relied upon to insulate the state through SLEF from paying Holmes’ judgment.

 In Cates, this Court stated the question to be resolved was whether the circuit court

correctly found a bailiff employed by the Jackson County circuit court “was not an

employee nor was he performing duties on behalf of the state or an agency thereof within

the meaning of section 105.711.2(2)” to be entitled to representation and reimbursement

for any judgment under SLEF. Id. at 903. This Court stated the bailiff could prevail on

his claim “only if: (1) he was an officer or employee of the state or any agency thereof;

and (2) the claim is against conduct which arose out of and was performed in connection

with his official duties on behalf of the state or any agency thereof.” Id. at 904 (emphasis

in original). Hence, the threshold issue to be resolved was whether the bailiff was entitled

to payment from SLEF under section 105.711.2(2) as a circuit court employee. This Court

did not need to reach the issue of when the bailiff’s conduct occurred or when the claim

arose because those considerations were irrelevant and inconsequential if first he did not

qualify as a state employee under section 105.711.2(2). “[A]s this Court has held countless

 6
times, an opinion is limited by the issues before the Court and any holdings beyond those

necessary to decide the issues are dicta.” Theroff v. Dollar Tree Stores, Inc., 591 S.W.3d

432, 440-41 (Mo. banc 2020) (Breckenridge, J. concurring). Because it was not necessary

to resolve when the bailiff’s conduct occurred or when the claim arose to deny the bailiff

relief, the sentence from Cates on which the principal opinion relies is unpersuasive dicta

and not dispositive of this appeal. 6

 Based on the foregoing, I believe the statues in effect in 2003 conferred the right of

SLEF coverage upon the former officers when their conduct occurred. Accordingly, I

would affirm the circuit court’s judgment finding the state, through SLEF, was obligated

to pay Holmes’ $2.5 million judgment against the former officers for their reprehensible

conduct in 2003 resulting in his wrongful conviction and incarceration.

 _______________________________
 GEORGE W. DRAPER III, Chief Justice

6
 In Smith, this Court described the Cates holding as focused on whether the bailiff was a
state employee or officer:

 Cates held, in particular, that a circuit court bailiff was not covered by the
 SLEF because he was paid by the county, despite the fact that he was hired
 by and served at the pleasure of the circuit judges and that his sole job was
 to assist the judges in the performance of their state responsibilities.
 Although the Cates Court rejected a “control” test in favor of a “payment”
 test, in this case, the outcome is dictated instead by the express language of
 the statute: St. Louis police officers are both officers of the City and officers
 of the state.

Smith, 152 S.W.3d at 279 (internal citation omitted). The principal opinion does not
address the argument it is immaterial whether SLEF could apply to events occurring before
it was enacted if the person seeking its benefit was not within the category of individuals
entitled to its protection.
 7